ROBERT E. DYER, APPELLANT, V. HASTINGS INDUSTRIES, INC., AND CNA INSURANCE COMPANIES, APPELLEES.

562 N.W.2d 348

Filed April 24, 1997. No. S-96-398.

T.J. Hallinan, of Cobb, Hallinan & Ehrlich, P.C., for appellant.

Dallas D. Jones, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LIKES, D.J.

LIKES, D.J.

Robert E. Dyer appeals from an order of affirmance on review by a Nebraska Workers' Compensation Court review panel affirming the trial court's dismissal of Dyer's action to recover workers' compensation benefits for mental depression that arose concurrent to his employment with Hastings Industries, Inc. We affirm.

## ASSIGNMENT OF ERROR

Restated, Dyer contends that the trial court erred by failing to find he was entitled to workers' compensation benefits for the

mental depression that arose during the course of his employment with Hastings.

## STANDARD OF REVIEW

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996).

The findings of fact made by a workers' compensation judge on original hearing have the effect of a verdict and are not to be disturbed on appeal unless clearly wrong. *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996).

## FACTS

Dyer began working for Hastings on April 29, 1959. Hastings is insured by CNA Insurance Companies. Dyer held a nonmanagement position in Hastings' shipping, receiving, and warehouse division. His duties included comparing freight invoices to deliveries, shuttling parts from the warehouse to the manufacturing area, and assisting with inventories. Over time, Dyer ascended to the position of group leader.

During 1991, the then 61-year-old Dyer began to experience headaches, loss of sleep, and loss of appetite. Dyer attributed these conditions to job stress.

At about the same time, Hastings hired a new manager, Gordon Flowers. Flowers became Dyer's immediate supervisor. Flowers instituted policy changes in the shipping and receiving division that affected the manner in which Dyer was to perform his work.

After Hastings hired Flowers, Dyer made several recording errors in his receiving ledger. Hastings took note of Dyer's errors and notified him that future errors would not be tolerated. Then, on May 4, 1992, citing Dyer's errors, Hastings demoted Dyer, reducing his pay by 50 cents an hour and removing him from the group leader position.

On May 7, 1992, management asked Dyer to shuttle parts to the floor, assist with United Parcel Service delivery, and begin preparations for an inventory. This was not the first time Dyer

had been asked to perform each of these duties. The record reflects that Hastings' manager, Richard Peck, told Dyer, "You've got to get it done." Dyer, who believed management was intentionally attempting to overwhelm him, responded, "Well, I can't do it all."

Dyer took medical leave from Hastings because of the depression he contends he experienced as a result of the events of May 7, 1992. At that time, Dyer described himself as emotionally upset, unstable, and disgruntled. He testified that he felt worthless and rejected, experienced memory loss, and entertained suicidal and homicidal thoughts.

Dr. Reynaldo de los Angeles examined Dyer shortly thereafter. In his report, Dr. de los Angeles wrote that Dyer's "depression is work-related" and that his "emotional problems were definitely related to the conditions of his place of employment."

Although Hastings had not asked Dyer to leave, he tendered his resignation on May 12, 1993. Thereafter, on June 17, Dyer filed suit in the Workers' Compensation Court, seeking workers' compensation benefits for the depression that arose during the course of his employment with Hastings. In his petition to the trial court, Dyer contended that on or about May 1, 1992, he suffered "personal injuries in an accident arising out of and in the course of his employment with . . . Hastings . . . ." Although the specific nature of the accident is not detailed in Dyer's petition, he contended that

> the accident resulting in personal injuries occurred when [Dyer] was exposed to severe harassment by his supervisors at work. Said harassment was so severe that no reasonable person should be expected to endure it, and it has resulted in severe depression and adjustment disorder with depressed mood, which has manifested itself objectively in the form of loss of appetite, loss of sleep, and homicidal ideation.

(Emphasis supplied.) Dyer also contended that his depression left him unable to work and forced him to seek continuing medical attention.

Hastings answered that any disability Dyer suffered did not result from an accident arising during the course of his employment.

On September 20, 1995, following a hearing, the workers' compensation court found that Dyer "experienced severe transient depression as a result of the circumstances of management scrutiny . . . ." However, the court dismissed Dyer's petition with prejudice because Dyer failed to satisfy his evidentiary burden to establish a compensable claim under Nebraska's workers' compensation laws.

On appeal, a three-judge Workers' Compensation Court review panel affirmed the trial court's decision. Dyer appealed to the Nebraska Court of Appeals, and we removed the appeal to this court pursuant to the authority granted to us by Neb. Rev. Stat. § 24-1106(3) (Reissue 1995) to regulate the caseloads of the Court of Appeals and this court.

## ANALYSIS

In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of or occurring in the course of the employment proximately caused an injury which resulted in disability compensable under the act. See Neb. Rev. Stat. § 48-151 (Reissue 1993). See, also, *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). In addition, § 48-151(2) provides, in relevant part, that in all workers' compensation cases, an "accident shall be construed to mean an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Thus, whether Dyer satisfied his burden of proving a compensable workers' compensation claim is at issue before this court.

The trial judge of the Workers' Compensation Court found that Dyer's depression resulted from mental stimulus rather than physical trauma. During cross-examination, Dyer himself admitted that his depression was not the product of an accident but resulted, instead, from management harassment.

It is undisputed that Dyer suffers from the unfortunate consequences of depression. However, after examining all of the evidence, the trial court concluded that Dyer's depression was

the product of "the circumstances of management scrutiny and his termination" from employment rather than the product of an accident or occupational disease arising out of his employment with Hastings. Under our standard of review, there is sufficient evidence to support the trial court's factual conclusion. Therefore, under the record, it cannot be said that the trial court's verdict was clearly wrong.

Accordingly, the decision of the review panel of the Nebraska Workers' Compensation Court is affirmed.

AFFIRMED.