MICHAEL WORLINE, APPELLEE, V. ABB/ALSTOM POWER INTEGRATED CE SERVICES, APPELLANT.

725 N.W.2d 148

Filed December 22, 2006. No. S-06-038.

Paul F. Prentiss and Charles L. Kuper, of Timmermier, Gross & Prentiss, for appellant.

James R. Harris, of Harris Law Offices, P.C., L.L.O., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

ABB/Alstom Power Integrated CE Services (Alstom Power) appeals from the order of a Nebraska Workers' Compensation Court review panel affirming the trial court's award to Michael Worline for injuries he suffered while employed by Alstom Power. The Workers' Compensation Court found that Worline had suffered injuries to his right shoulder, neck, and lower back and awarded workers' compensation benefits in relation to those

injuries, including vocational rehabilitation services and counseling. We affirm.

## SCOPE OF REVIEW

■ Under Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing; the findings of fact of the trial judge will not be disturbed upon appeal unless clearly wrong. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005).

## FACTS

Worline began working as a boilermaker in 1971. His work consisted of building and repairing coal fire boilers and other physically demanding tasks. His average weekly wage in November 2000 was $1,418.29. At the time of the accident, Worline was working at a power plant in Sutherland, Nebraska. Worline testified that except for an unrelated carpal tunnel problem, both his physical and mental conditions were good before the accident.

On November 2, 2000, Worline and three coworkers were moving a turnbuckle that weighed 300 to 350 pounds. Worline carried one end of the turnbuckle with his back to his coworkers. While they were walking, one employee was sent to get a piece of equipment and another stopped carrying the turnbuckle for some unexplained reason. The third employee dropped his end of the turnbuckle. The weight of the turnbuckle caused Worline to fall to his knees and bent him over backward.

Worline was helped to his feet by his coworkers. He felt an aching pain in his neck, shoulder, and lower back, and he had trouble walking. The safety coordinator for the jobsite placed heat

and ice on Worline's neck, shoulder, and lower back throughout the day.

The following day, Worline returned to the jobsite, but he felt "real stiff" and could not move his right arm. His shoulder was making a "cracking" sound. He was examined by Dr. Jeffrey Brittan, a physician in North Platte, Nebraska. Brittan noted that Worline had "hurt his shoulder [and] low back, at work yesterday when a 300 [pound] turnbuckle knocked him to the ground" and that Worline complained of shoulder and neck pain. Brittan diagnosed Worline's injuries as muscle strain and prescribed muscle relaxants.

Worline testified that he worked for Alstom Power a few more days on "light duty." He stopped working around November 13, 2000, and returned to his home near Casper, Wyoming. He was examined by Dr. John Barrasso, a general orthopedist, who reported that Worline had injured his back and shoulder while working in Nebraska and noted that problems persisted with Worline's shoulder; specifically, a "popping" and "clicking" sound was heard when Worline moved his shoulder. Barrasso ordered an MRI, which showed some irregularity with hypertrophy at the acromioclavicular joint. On December 20, Worline was still experiencing pain in his shoulder, and Barrasso prescribed 2 weeks of physical therapy.

Worline saw Barrasso on several occasions throughout 2001. Worline continued to experience discomfort, and various alternative treatments were discussed. Barrasso noted that when Worline performed overhead work or climbing, he experienced increasing pain in the right shoulder with pain radiating up into the neck and ear.

Worline's employment records indicated that he had worked for some time each month during 2001. Because of continued discomfort, tenderness, and limited motion in Worline's shoulder, he underwent arthroscopic surgery on December 21. He returned to work as a rigger in Gillette, Wyoming, on January 18, 2002, and worked there until February 28. Worline testified that he experienced pain in his neck and lower back during that time.

When Worline returned to Barrasso on February 4, 2002, Barrasso recorded the following:

[Worline] tells me now that he is able to distinctly tell the difference between his right shoulder pain and the neck pain and in the past he said the whole thing felt like it was running together. . . . This all relates to his work related injury and he tells me that they got onto the back issue right away when he was injured at work.

As a result of Worline's complaints of neck pain, Barrasso ordered MRI's. An MRI of the cervical spine revealed a right paracentral disk herniation at the C4-5 level. An MRI of the lumbar spine showed posterior bulging of the T12-L1 disk and the L5-S1 disk. Barrasso referred Worline to Dr. Clayton Turner, an orthopedic surgeon who specialized in spine conditions.

Turner testified that he first treated Worline on March 1, 2002. Worline described his work-related accident of November 2, 2000, and complained of chronic pain in his neck, right shoulder, right upper arm, and lower back stemming from that accident. Turner reviewed the medical reports and the MRI's and opined that Worline's cervical and lumbar injuries were sustained when the turnbuckle fell on him in November 2000.

Turner testified that Worline chose to pursue a nonsurgical option—a nerve block—and according to Turner, Worline underwent two nerve blocks between March 1 and April 15, 2002. He obtained relief, but it lasted only 2 days after each treatment. Because the relief was temporary, Turner recommended surgical treatment to include an anterior cervical diskectomy and fusion at C4-5. Turner released Worline to work with these restrictions: no repetitive lifting, stooping, or bending; no lifting greater than 20 pounds; and no driving more than 30 minutes at a time.

Worline testified that between April and October 2002, his condition deteriorated. He said that during that time, he had become increasingly depressed and angry over his injuries and treatment and he visited a psychologist in July. He also applied for Social Security disability benefits. Mark Watt, a licensed psychologist, examined Worline in July 2002 and summarized his findings as follows:

Worline is . . . currently functioning in the average range of intellectual and estimated at least low average range in memory ability. He has been suffering from frustration, pain, and anger secondary to an injury he received on the

job. He has been currently stressed by his difficulty in getting needed medical care and disability that he feels that he is entitled to. . . . It is obvious that he suffers from chronic pain, frustration, and anger about how he feels that he has been dealt with by the disability system.

Watt opined that the prognosis for improvement of Worline's mental state was guarded pending resolution of his physical condition.

Worline was later evaluated by Dr. Bruce Leininger, a clinical neuropsychologist. Leininger did not offer a firm diagnosis; however, based on his review of Worline's medical records and Leininger's own observation, he opined that the "diagnostic formulations" Watt had suggested concerning Worline's anger and frustration did not seem unreasonable. Leininger believed there was a psychological and emotional overlay to Worline's symptom reporting and behavior. Leininger noted that Worline would benefit from counseling.

Alstom Power requested that Worline obtain a second medical opinion in relation to his workers' compensation claim and the necessity of surgery. Dr. Mark Rangitsch, an orthopedic specialist in Cheyenne, Wyoming, examined Worline on September 23, 2002. Based upon the examination and a review of Worline's medical records, Rangitsch believed that the nature of Worline's work-related injuries on November 2, 2000, was consistent with the symptoms Worline subsequently had experienced; that the limitations on his neck, shoulder, and back were due to the injuries; and that Worline had not reached maximum medical improvement. He agreed with Turner that surgery was required. Alstom Power then authorized Worline's surgery, which was performed on October 15, 2002. Turner successfully performed a decompressive anterior cervical diskectomy and fusion at the C4-5 level.

Following surgery, Turner examined Worline and advised him to gradually resume activities as tolerated. On January 6, 2003, Turner completed a form for the Boilermakers National Health and Welfare Fund. He reported that Worline had not been released to work. On January 23, Turner noted that Worline was experiencing minimal discomfort in his neck 3 months after surgery and continued to complain of problems with his right

shoulder. Turner recommended against Worline's returning to work as a boilermaker, but believed he was capable of performing sedentary work with sitting, standing, and no lifting greater than 10 pounds. In February, Turner concluded that Worline's surgery had resolved the right-sided C-5 radiculopathy; however, persistent symptoms in the right shoulder caused Turner to suspect ongoing impingement syndrome with adhesive capsulitis. He advised Worline to return to Barrasso for further evaluation.

Barrasso concluded that Worline had significant postural limitations and could lift no more than 10 pounds. On a form for the Boilermakers National Health and Welfare Fund, Barrasso reported that Worline could not work.

On March 18, 2003, Worline saw Dr. Stuart Ruben, his family physician, and reported that he had been having dizzy spells, one of which had caused him to fall. Worline experienced dizziness and ringing in his ears over a period of 5 months. Worline also saw Dr. Karen Wildman for these symptoms in June 2003. Wildman examined Worline and noted that his main concerns were intermittent dizziness and chronic pain. Worline also expressed frustration that he had been unable to return to work. He stated that along with pain in his neck and shoulder, he had been suffering from frequent muscle tension headaches, which started in the back of the neck and went to the top of his head.

At the request of Alstom Power, Dr. Bernard Kratochvil, an orthopedic specialist, conducted an independent medical examination of Worline on August 11, 2003. Kratochvil opined that Worline's complaints of neck discomfort and the subsequent cervical surgery were caused by degenerative changes in the cervical spine that preceded the November 2000 work accident. He believed the accident resulted in a contusion of Worline's right shoulder but that the impingement syndrome was not caused by the accident. He further believed that Worline's lumbar symptoms were due to daily living activities. Kratochvil reported that Worline had reached maximum medical improvement from any injury sustained on November 2, 2000.

Dr. Tuenis Zondag conducted an independent medical evaluation in October 2003 at the request of Turner. Zondag specialized in occupation and pain medicine. Zondag reviewed Worline's medical records and met with Worline and his wife.

He opined that Worline's complaints of pain in his neck, right shoulder, and lower back were causally related to his work-related accident in November 2000. He stated that Worline had reached maximum medical improvement 6 months after the cervical surgery and that Worline had a 34-percent whole person impairment, which incorporated the neck fusion, midback pain, lumbar pain, and the right shoulder injury. In Zondag's opinion, Worline had been forced to adjust to a change in his life that resulted from the incident in November 2000 and this change had led to his anxiety, depression, and some ongoing pain. He stated that Worline's substantial work restrictions would be permanent and that Worline's inability to be employed was causally related to his work injuries.

Another independent medical examination was conducted in May 2004 by Dr. Dean Wampler. He noted that Worline complained that the workers' compensation system had caused him a great deal of emotional distress, that he believed he had been unable to get the medical care he needed, and that he had been financially ruined. Wampler opined that Worline's right shoulder injury was caused by his November 2000 work duties, but Wampler was unable to form an opinion regarding the origin of the cervical disk herniation.

Trial was held before the Workers' Compensation Court on August 13, 2004. Worline claimed that he injured his right neck, shoulder, and lower back in the work-related accident and that as a result of those injuries, he suffered emotional, psychological, and psychiatric problems. The trial court found that the injuries to his neck, shoulder, and lower back arose out of and in the course of his employment with Alstom Power and that given his physical limitations, Worline would not be able to work as a boilermaker.

The trial court found that Worline's realization that he could not continue to work as a boilermaker caused him to be angry and frustrated. The court noted that several of the medical reports in evidence discussed Worline's anger and frustration. It found that Worline's inability to deal with his present situation, inability to return to a high-paying job, and inability to perform physical activities and labor as he had done in the past were a result of the injuries suffered in the accident of November 2, 2000.

The trial court directed that Worline receive counseling and vocational rehabilitation services. It found that Worline would not reach maximum medical recovery until he had received counseling. It determined that Worline was entitled to receive temporary benefits, vocational rehabilitation services, and all future medical care arising from the work-related accident. Alstom Power was ordered to pay certain medical bills for Worline.

Alstom Power asked a review panel of the Workers' Compensation Court to reverse the trial court's award. The company alleged the trial court erred in entering the award and raised the same errors the company now sets forth in this court under the assignments of error. The review panel affirmed the award of the trial court, and this appeal timely followed. We moved the appeal to our docket.

## ASSIGNMENTS OF ERROR

Alstom Power contends, in summary, that the workers' compensation court erred (1) in finding that Worline suffered a compensable injury to his neck as a result of the accident on November 2, 2000; (2) in finding that Worline suffered a compensable injury to his lower back as a result of the November 2000 accident; (3) in ordering the company to pay medical expenses related to Worline's neck injury; (4) in awarding Worline counseling for anger and frustration as a consequence of the November 2000 accident and resulting injuries; and (5) in failing to find that Worline had achieved maximum medical improvement.

## ANALYSIS

### NECK AND LOW-BACK INJURIES

It is undisputed that the record supports the Workers' Compensation Court's finding that Worline sustained injuries arising out of the course and scope of his employment. The first issue raised by Alstom Power is whether competent evidence established that Worline suffered an injury to his neck. Alstom Power claims the compensation court was clearly wrong in finding there was a neck injury. The company relies on the fact that Worline initially did not mention any injury to his neck. Alstom Power also relies upon the opinion of Dr. John Goldner, who conducted an independent evaluation and opined that it was

unlikely Worline would not have noticed neck pain with radicular symptoms down the right arm even in the presence of right shoulder pain. Alstom Power contends that ordinary work, not the November 2000 accident, caused the herniated C4-5 disk. The company claims that the opinions of Turner, Rangitsch, and Zondag were based upon erroneous statements regarding Worline's symptoms and that, therefore, the award of benefits for a neck injury was clearly wrong.

In our review, we consider the evidence in the light most favorable to Worline, the successful party, and the findings of the Workers' Compensation Court have the same force and effect as a jury verdict in a civil case. See, *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005); *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995).

Barrasso examined Worline and recorded that he had injured his back and right shoulder while working. After arthroscopic shoulder surgery, Barrasso noted that Worline had tenderness in his neck and that he was distinctly able to tell the difference between the right shoulder pain and the neck pain; whereas before surgery, he had felt like the pain was running together. Turner opined that Worline's cervical and lumbar injuries were sustained in the accident of November 2, 2000. Rangitsch concluded that Worline's work-related injuries were consistent with the symptoms that he subsequently had experienced and that the limitations of Worline's neck, shoulder, and back were due to those injuries. Zondag conducted an independent medical evaluation of Worline and opined that his neck and low-back injuries were causally related to the work-related accident in November 2000.

The evidence before the Workers' Compensation Court included the opinions of at least three physicians who expressed that Worline's neck injury was caused by the work-related accident. If the record contains evidence to substantiate the factual conclusions reached by the trial court in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

Regarding Worline's low-back injury, Alstom Power asserts that he complained of low-back symptoms immediately after the work-related accident but that thereafter, the medical records

are devoid of complaints of low-back pain. The record does not support this assertion. On March 1, 2002, Turner recorded that Worline suffered from chronic back pain and he recommended physical therapy and the use of anti-inflammatory medications. Turner testified that Worline continued to complain of an aching back. Worline also testified that he experienced pain in his neck and lower back while working in 2002. On May 11, 2004, Wampler noted that Worline was experiencing low-back pain. Turner, Rangitsch, and Zondag had all concluded that Worline's low-back symptoms were causally related to the work incident. The evidence in the record, viewed in the light most favorable to Worline, supports the finding of the trial court that he injured his lower back as a result of the November 2000 accident.

■ The trial court is entitled to accept the opinion of one expert over another. See *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997). When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Sweeney v. Kerstens & Lee, Inc.*, 268 Neb. 752, 688 N.W.2d 350 (2004). The record before us contains sufficient evidence to substantiate the factual conclusions reached by the Workers' Compensation Court regarding Worline's neck and low-back injuries. Sufficient competent evidence in the record supports the judgment of the court, and the findings of fact by the court support the award.

### COUNSELING FOR ANGER AND FRUSTRATION

Concurrently with awarding vocational rehabilitation services, the trial court found that Worline was entitled to receive counseling for anger and frustration. This determination was based upon evidence indicating that Worline would not achieve maximum medical recovery until he received such counseling. Alstom Power argues that the trial court was clearly wrong because the source of Worline's anger and frustration was not his physical injuries.

Worline testified that he was feeling very depressed because he did not have any money and, with regard to his anger, that he thought "something should be done about the people who were involved and working for this company." Alstom Power claims, therefore, that Worline's anger, by his own admission, is related

to mental stimuli and not to his physical injuries and that the compensation court was clearly wrong in awarding counseling.

■ In addition to physical impairments, psychological injuries are compensable under the workers' compensation scheme. *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991). The question is whether there was sufficient evidence in the record for the trial court to determine that Worline's psychological injuries were a result of the work-related accident.

■ In workers' compensation cases involving allegations of psychological injuries, the burden is on the claimant to prove by a preponderance of evidence that his disability is the result of an accident arising out of his employment. *Id.* A worker is entitled to recover compensation for a mental illness if it is a proximate result of the worker's injury and results in disability. *Sweeney v. Kerstens & Lee, Inc., supra.* Where the evidence is sufficient to permit the trier of fact to find that a psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated. *Id.*

Worline testified he had never received psychiatric or psychological treatment before his work injuries of November 2000 but that as his physical problems arising from the accident lingered, his psychological condition deteriorated. Watt, a psychologist, evaluated Worline at the request of the Social Security Administration and summarized that Worline had been "suffering from frustration, pain, and anger secondary to an injury he received on the job." Watt diagnosed Worline as suffering from pain disorder associated with both psychological and medical conditions and adjustment disorder with mixed depression and anxiety.

Dr. Jeffrey Coffman, a psychiatrist, also evaluated Worline. In Coffman's opinion, the ongoing nature of Worline's pain and the work-related disability he had endured represented the type of stressors recognized as precipitants in the criteria for adjustment disorder. Coffman found that sufficient stressors existed from the injuries and their consequences to induce an adjustment disorder causing Worline's current disability.

Zondag, an occupational medicine specialist, testified that in addition to the physical injuries, Worline experienced "an adjustment reaction to the change in his life because of all these things,

which led to this anxiety and his depression and led to some ongoing problem pain." Zondag concluded that Worline,

> because of the reaction to change that has been produced upon his body, has got a significant emotional difficulty that occurred that's exemplified by . . . over-reporting, his difficulty with interaction, his difficulty with speaking out of turn, his difficulty with not always following the lines of questions. And I think that's an adjustment reaction problem that's there.

Zondag believed that based upon Worline's work restrictions and his emotional difficulties, he would not be able to return to competitive employment or be employable or retrainable.

Zondag opined that Worline's emotional difficulties were causally related to the circumstances surrounding the work-related accident, which circumstances included the denial of his workers' compensation claims and the resulting litigation, his medical treatment, and the difficulties he had experienced functioning in his job. Although a functional capacity evaluation indicated Worline could do some work, Zondag opined that Worline was unable to work at that time due to his anger management and frustration. According to Zondag, Worline's emotional response and adjustment reaction were based upon the injuries of November 2000.

In addressing the issue of anger and frustration, the trial court found there was no doubt that Worline was unable to return to his position as a boilermaker and that Worline knew this and was angry. He had been earning approximately $50,000 to $60,000 per year and was presently in a position where he had to find employment. There were no jobs in Evansville, Wyoming, that would pay $50,000 to $60,000 per year to someone with Worline's educational background and physical restrictions. He was relegated to an entry-level job that would pay around $12,000 to $15,000 per year, assuming such job was available.

The compensation court concluded that Worline should be given counseling for his anger and frustration and that vocational rehabilitation services should be provided. It found that Worline's problem was his inability to deal with his present situation and his inability to perform physical activities and physical labor as he had in the past. It concluded that a counselor should

address these issues, which had resulted from the injuries suffered in the accident of November 2, 2000.

Alstom Power relies upon our decision in *Dyer v. Hastings Indus.*, 252 Neb. 361, 562 N.W.2d 348 (1997). In that case, the trial court concluded that the claimant's depression had resulted from a mental stimulus rather than physical trauma. *Dyer* is distinguishable because no physical injury had caused the claimant's depression. Instead, he had been demoted and his pay had been reduced as a result of alleged performance deficiencies. The claimant contended that the "accident" occurred when he was harassed by his supervisors. He asserted that his depression rendered him unable to work and forced him to seek continuing medical attention.

Dr. Terry Davis conducted a psychiatric evaluation of Worline in May 2004 and opined that he suffered from conversion disorder. Davis did not believe the disorder was caused by the work accident and injuries. Although Alstom Power points to evidence that Worline's psychological difficulties were not caused by the accident, the trial court was entitled to accept the opinions of certain experts over others. The record presented conflicting medical testimony, and we will not substitute our judgment for that of the compensation court. We conclude that the record presents sufficient evidence to permit the trial court to find that Worline's psychological injuries resulted from the work-related accident. The court did not err in finding that Worline needed counseling for anger and frustration.

## MAXIMUM MEDICAL IMPROVEMENT

The trial court found that until Worline received the recommended counseling, he would not reach maximum medical improvement, and that Worline should receive compensation. Worline's average weekly wage entitled him to temporary total disability benefits of $487 per week.

The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). Alstom Power

argues that the trial court erred in awarding temporary total disability benefits because Worline's anger and frustration were not causally related to his November 2000 accident. Having determined that the compensation court did not err in finding that Worline's anger and frustration were causally related to the accident, we also conclude that the court did not err in finding that Worline had not yet reached maximum medical improvement.

## CONCLUSION

The evidence, considered in the light most favorable to Worline, is sufficient to support the findings of fact and the award made by the trial court, which determinations were affirmed by the review panel. The judgment and award of the Workers' Compensation Court are therefore affirmed. An award of attorney fees in accordance with Neb. Rev. Stat. § 48-125 (Cum. Supp. 2006) will be considered upon a motion and supporting affidavit filed consistent with Neb. Ct. R. of Prac. 9F (rev. 2006).

AFFIRMED.

HEAVICAN, C.J., not participating.