IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

MOTT V. TRACTOR SUPPLY CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MELANIE MOTT, APPELLEE,

V.

TRACTOR SUPPLY COMPANY AND XL INS. AMERICA, INC., APPELLANTS.

Filed October 27, 2015.    No. A-15-141.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Tiernan T. Siems and Sara A. Lamme, of Erickson & Sederstrom, P.C., L.L.O., for appellants.

Holly Morris, of Shasteen & Morris, P.C., L.L.O., for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Tractor Supply Company and XL Ins. America, Inc. (Tractor Supply), appeal from an award of the Nebraska Workers' Compensation Court. We affirm the award except for the amount of attorney fee ordered. As to that issue, we reverse and remand to the compensation court for evidence and specific findings as to a reasonable attorney fee.

### BACKGROUND

Melanie Mott was injured on October 17, 2013, while working as a picker at Tractor Supply when she caught a falling box weighing approximately 72 pounds. Mott described experiencing immediate pain in her lower back, hip, and down her right leg. She reported to her supervisor and

- 1 -

Human Resources, and Tractor Supply sent her to an urgent care clinic. The urgent care clinic referred Mott to Dr. Geoffrey McCullen, who had previously performed a spinal fusion surgery on her. Mott had fully healed from her prior fusion surgery and was working without restrictions at the time of her October 17 injury.

After the October 17, 2013, accident, Mott returned to work at Tractor Supply on light duty driving a floor scrubbing vehicle. However, on October 22, Mott misjudged the clearance down an aisle and collided with a "let-down-put-away rig." Although no one was injured in the accident, Mott felt that she was not safe driving the floor scrubber because of the narcotics she was using for her back pain. Mott was placed on leave following the scrubber accident. Tractor Supply then offered Mott a position in house cleaning, but rescinded the offer after learning that Mott was still medicating with narcotics. Mott was administratively terminated following the expiration of her medical leave on March 22, 2014.

After reviewing a lumbar MRI, Dr. McCullen noted that the site of Mott's previous fusion had not been re-injured by the October 17, 2013, accident. He noted a slight disc bulge on the left, at a level above the fusion, but did not believe it caused Mott's right-sided symptoms. Dr. McCullen saw no nerve compression and posited that Mott's symptoms might be sacroiliac. He prescribed physical therapy, pain medication, and a right SI joint diagnostic block injection. Mott did not find that the SI joint injection was helpful in improving her pain. Dr. McCullen did not believe that any surgical options existed to improve Mott's condition and suggested facet injections. Dr. McCullen believes in avoiding fusion if at all possible, particularly in young patients. Mott was 36 years old at the time of the accident.

In February 2014, Mott scheduled an appointment to receive a second opinion from Dr. Daniel Ripa at Nebraska Orthopaedic and Sports Medicine, P.C. Dr. Ripa suggested that if a facet injection provided temporary relief to Mott, then surgically extending her fusion could provide relief for her pain. After a facet injection provided 8 hours of dramatic pain relief, Dr. Ripa opined that a fusion surgery that eliminated motion in the facet joints would help relieve Mott's symptoms. Mott wished to proceed with the surgery, and Dr. McCullen transferred her care to Dr. Ripa following a March 25, 2014, visit. Dr. Ripa has stated that Mott must cease use of tobacco before she will be a candidate for fusion surgery. Mott testified at trial that she had ceased tobacco use for the 2 weeks prior to trial but that she had smoked a cigarette on the morning of trial due to stress.

In May 2014, Dr. Peter Cimino performed an Independent Medical Exam (IME) on Mott. Dr. Cimino opined that further surgery was a reasonable option, but that he was much more inclined to agree with Dr. McCullen's recommendation against surgery. He also stated that a second facet joint injection would normally be recommended.

## ASSIGNMENTS OF ERROR

Tractor Supply assigns that the trial court erred in (1) failing to recuse itself, (2) reaching conclusions in the case prior to the review of the evidence, (3) finding that Mott is entitled to surgery, (4) failing to find that Mott was at maximum medical improvement (MMI) on March 25, 2014, (5) finding that Mott is entitled to temporary benefits, (6) awarding excessive attorney fees, and (7) issuing a second order concerning medical bills.

STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. Int'l Paper Destruction & Recycling*, 291 Neb. 415, 865 N.W.2d 371 (2015). In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law. *Id.*

When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court, the evidence must be considered in a light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Owen v. Am. Hydraulics, Inc.*, 258 Neb. 881, 606 N.W.2d 470, (2000).

A trial court's ruling on recusal will be affirmed absent an abuse of discretion. *Huber v. Rohrig*, 280 Neb. 868, 872, 791 N.W.2d 590, 597 (2010).

ANALYSIS

*Recusal.*

Tractor Supply's first assignment of error is that the compensation court judge erred in failing to recuse himself from the case. A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *In re Kendra M.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

Nebraska appellate courts have found bias as a matter of law in cases where judges have made factual determinations about the parties not related to the evidence in the case. See *id.* (finding appearance of bias requiring recusal where a judge issued custody determinations when no evidence had been presented on these issues); *Mihm v. Am. Tool*, 11 Neb. App. 543, 547, 664 N.W.2d 27 (2003) ("[T]he court behaved as an advocate in reciting certain 'facts' about American Tool despite the absence of any evidence as to those 'facts' at that point."). However, judicial "questions or remarks" aimed at preventing misconception or clarifying facts in evidence may be proper. See *Buhrman v. Smollen*, 164 Neb. 655, 83 N.W.2d 386 (1957); see also *Schommer v. Bergfield*, 178 Neb. 140, 132 N.W.2d 345 (1965).

Part of Tractor Supply's objection at trial was that the court proceeded improperly by questioning the attorneys during opening statements. While we agree with Tractor Supply that the judge's lengthy questioning of attorneys about what the evidence would be at the opening of trial is not the preferable format for a workers' compensation proceeding, nothing in the rules of the

Nebraska Workers' Compensation Court prevents judges from asking questions of counsel during opening statements. We note that the workers compensation rules specifically contemplate pretrial discussion with attorneys to "improve[e] the quality of the trial through more thorough preparation" and "expedit[e] the disposition of the action." (Neb. Work. Comp. Ct. R. 6). However, the rule contemplates such discussions occur with the attorneys and any unrepresented parties and take place before trial. While not a best practice to conduct pretrial discussions in the presence of the parties at the beginning of the trial, we disagree with Tractor Supply's contention that the judge's questions demonstrated bias or prejudice toward one party or the other.

Here, Tractor Supply argues that the compensation court judge demonstrated bias through questions and remarks he made during opening statements. The judge noted that he had not asked the parties to conference before the trial, and stated that he therefore wanted a chronological narrative of facts and issues at the opening of the trial. Of particular concern to Tractor Supply were the compensation court's comments that "the one thing that you're slow in telling me is that [the plaintiff] was offered light duty," "it's time to start really telling me what all is going on," and "I want the lawyers to tell me what happened and then I'm going to look at the evidence and see if the lawyers fibbed to me or not." Tractor Supply argues that the effect of these comments was to lay out specific instructions to Mott on how to testify, to indicate that the judge had reached decisions without admitting evidence, and to signal bias against Tractor Supply.

We do not find support for Tractor Supply's contention that the compensation court's comments demonstrated bias or a failure to consider evidence before reaching conclusions. In reviewing the bill of exceptions, we find that the compensation court questioned both attorneys about their arguments after exhibits had been offered and received. The judge frequently asked both attorneys to reference the evidence in the record that supported their arguments. His comment about checking the record to "see if lawyers fibbed" to him was directed at both attorneys. When requested by Tractor Supply's attorney to recuse himself for giving instructions to Mott's attorney, the court responded "I think I've also given you some hints on what you ought to be doing."

While we do not encourage the type of colloquy or judicial input that occurred in the present case, a reasonable person aware of the circumstances of the case would not question the judge's impartiality because of these comments. As stated by the United States Supreme Court, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994). Consequently, the compensation court did not abuse its discretion in denying Tractor Supply's motion to recuse on the basis of prejudice or bias. See *Gibilisco v. Gibilisco*, *supra*.

*Findings of Fact.*

Tractor Supply next assigns that the compensation court reached factual conclusions before considering the evidence. This argument is based on a discussion during opening statements about temporary total disability. Mott argued that Tractor Supply had incorrectly calculated her weekly wage and had consequently paid too little on each of the temporary total disability checks it had issued. After Mott raised this issue, the court asked both sides to "do the math" and arrived at the amount that "should have been paid" based on Mott's correct wage statement. Counsel for Tractor Supply objected that the comment about what "should have been paid" presupposed a finding on

another issue--whether Mott was entitled to temporary total disability at all. The court then amended its statement that the math was to figure out what was owed "if she's entitled to temporary total."

In the exchange at issue, the compensation court was exploring the mathematical basis for Mott's waiting time penalty argument. Given this context, we do not find the court's request that the attorneys calculate an amount of potential underpayment based on an agreed wage statement to mean that the court had concluded that it would award temporary total disability. Instead, it was calculating the weekly amount that would be due based on the recently-released wage statement and comparing it to the amount of temporary total that Tractor Supply had been paying prior to trial. The court further clarified that it had not reached any conclusions. Accordingly, we find this assignment of error to be without merit.

*Entitlement to Surgery.*

Tractor Supply next assigns that the compensation court erred in finding that Mott was entitled to surgery. Nebraska law provides that "[t]he employer is liable for all reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment." Neb. Rev. Stat. § 48-120 (Cum. Supp. 2014). Where a record contains conflicting medical testimony about the necessity of a medical intervention, the trial court is entitled to accept the opinion of one expert over another and an appellate court will not substitute its judgment for that of the compensation court. *Worline v. ABB/Alstom Power Integrated CE Servs.*, 272 Neb. 797, 725 N.W.2d 148 (2006).

Although Dr. McCullen and Dr. Cimino recommended against surgery, the record also contains the opinion of Dr. Ripa, who opined that a fusion would help relieve her symptoms. Dr. Ripa states that his opinion is made to a reasonable degree of medical certainty and that Mott's symptoms are due to her October 17, 2013, work injury. Dr. Ripa's opinions therefore provide a sufficient basis for the compensation court to conclude that Mott is entitled to the surgery under § 48-120.

Tractor Supply argues that Dr. Ripa's opinion is undermined by his checking "agree" on a checkbox medical opinion form to the statement "[i]f it were shown to me that Ms. Mott was capable of performing activities inconsistent with her self-described pain level, such as riding horses, it would cause me to rethink my opinion regarding the necessity for Ms. Mott to have fusion surgery." Although the record contains photographs of Mott on a horse, Mott's testimony at trial was that she had only attempted to ride a horse one time and was in a great deal of pain afterwards. Accordingly, the evidence at trial would support a finding that Mott was not capable of riding horses and therefore Dr. Ripa's opinion would remain the same.

Because Dr. Ripa's opinions offer sufficient competent evidence on the record to support the trial court's award, this assignment of error is without merit. *Hynes v. Good Samaritan Hosp.*, 285 Neb. at 985, 830 N.W.2d at 499 (compensation court awards may be set aside only under certain circumstances, such as when evidence in record is not sufficient to support award).

*Maximum Medical Improvement.*

Tractor Supply next assigns that the compensation court erred in failing to find that Mott had reached maximum medical improvement (MMI) on March 25, 2014. MMI is defined as the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Worline v. ABB/Alstom Power Integrated CE Servs.*, *supra*. Generally, whether a claimant has reached MMI is a question of fact. *Stacy v. Great Lakes Agri Mktg., Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

Dr. Ripa opined that Mott had reached MMI if surgery is excluded as an option. However, we have determined above that the compensation court was not wrong to award surgery to Mott. Because Mott will receive the surgery, Dr. Ripa's opinion does not place her at MMI, nor does any other doctor. Tractor Supply argues that Mott's condition was stable after March 25, 2014; this argument might support a finding of MMI on that date, but this is a question of fact and we will not substitute our judgment for that of the compensation court. We cannot say that the compensation court judge was clearly wrong to find that Mott has not reached MMI given the medical testimony on the record that surgical and non-surgical treatments remain available to her. Therefore, this assignment of error is without merit.

*Temporary Benefits.*

Tractor Supply's fifth assignment of error is that the compensation court erred in awarding temporary total disability benefits to Mott. Temporary disability payments contemplate the period the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Uzendoski v. City of Fullerton*, 177 Neb. 779, 131 N.W.2d 193 (1964). An employee's disability as a basis for compensation under § 48-121 is determined by the employee's diminution of employability or impairment of earning power or earning capacity. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237 639 N.W.2d 125 (2002). In addition to evidence of physical restrictions, compensation courts may rely on the claimant's testimony on this issue. *Id.*

Tractor Supply argues that Mott has not met her burden to present evidence sufficient to show that she is unable to return to work or that she has sustained a loss of earning capacity for a period of temporary disability. As described above, we do not find that the compensation court was clearly wrong in determining that Mott has not reached MMI and is still convalescing and submitting to treatment. Therefore, the relevant issue under *Uzendoski* is whether sufficient evidence in the record supports the compensation court's determination that Mott is unable to work because of the accident. See *Uzendoski v. City of Fullerton*, *supra*.

Mott testified that she attempted to return to Tractor Supply on light duty but was unable to perform the work assigned to her, in part because her medication made her lightheaded and sleepy. After a work accident in which she caused a collision while driving a scrubber, Tractor Supply put Mott on leave and did not have additional work available to her as long as she was medicated with narcotics. Mott testified that she last medicated with narcotics one month before trial.

On September 25, 2014, Dr. Ripa wrote a note that Mott was currently advised to be off work. Between the time of the accident and March 25, 2014, Dr. McCullen filled out work status forms at least once per month. These forms varied from not authorizing return to work to allowing

sedentary or light work with time and movement restrictions. Dr. McCullen's final return to work note in March 2014 authorized only sedentary work with no bending, twisting, pushing, pulling, or lifting from floor to waist and only occasional lifting from waist to shoulder. Mott was further prohibited from kneeling and squatting. Dr. McCullen also restricted Mott to sit for intervals of no more than 30 minutes for only 0 to 2 hours per day, to stand or walk for only 2 to 5 hours per day, and to drive or climb for only 0 to 2 hours per day.

Although Mott testified that she would be willing to work in a position that accommodated her restrictions, she also testified at trial that she was in considerable pain and that she would not be able to perform any of the jobs that she has previously held because of her movement restrictions. Given Dr. Ripa's note opining that Mott should currently be off work, the extensive physical restrictions assigned by Dr. McCullen, and Mott's own testimony about her current physical limitations, the compensation court was not clearly wrong to conclude that Mott is unable to work, and is therefore entitled to temporary disability payments. See *Frauendorfer v. Lindsay Mfg. Co.*, *supra*.

*Attorney Fees.*

Tractor Supply next assigns that the compensation court was unreasonable in awarding a $5,000 attorney fee for underpayment of temporary total disability payments. Nebraska workers' compensation law provides:

> Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury . . . and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014). The determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis. *Simmons v. Precast Haulers, Inc.*, 288 Neb. 480, 849 N.W.2d 117 (2014). In assessing a reasonable attorney fee, particular attention should be given to the amount of legal work performed in relation to the amount of the unpaid medical expense and the amount of the unpaid medical expense in relation to the workers' compensation award received. *Id.*

As we concluded above, the record supports the compensation court's award of temporary total disability payments to Mott and the fact that it was underpaid. Tractor Supply had notice of the underpayment claim for more than 30 days before trial and did not issue payment.

For 51 weeks, Tractor Supply paid $98 per week less in temporary total disability than it should have. The compensation court awarded Mott this amount, plus a 50 percent waiting time penalty pursuant to § 48-125. As such, Mott was entitled to a reasonable attorney fee.

The record before us does not contain any evidence of the attorney fee charged for the case or what portion of the fees were directly attributable to the collection of the underpayments. The $5,000 award of attorney fees is unreasonable in light of the record's lack of evidence concerning fees. See *Cochran v. Bill's Trucking, Inc.*, 10 Neb. App 48, 624 N.W.2d 338 (2001) (reversing attorney fee award and remanding for evidence and a further determination). Some award is

justified, but the case must be remanded for evidence and specific findings as to the appropriate amount.

*Bills.*

Tractor Supply's final assignment of error is that the compensation court erred in modifying its award to require it to pay three unpaid prescriptions totaling $50.89, and an unpaid medical bill for smoking cessation consultation. Tractor Supply argues that the prescriptions were unauthorized care and that the smoking cessation is unnecessary because the surgery requiring it is not reasonable.

Having reviewed the record, we determine that the two pain medications were ordered by Mott's treating physicians for her work related injuries and were compensable. We further find no abuse of discretion in the trial court's award for payment of the smoking cessation consultation or the related prescription aid. This assignment of error is without merit.

## CONCLUSION

We affirm the decision of the workers compensation court with the exception of the award of a $5,000 attorney fee. As to that issue, we reverse and remand for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.