IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

SMITH V. NEBRASKA MED. CTR.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GRACE SMITH, APPELLEE,
V.
NEBRASKA MEDICAL CENTER, EMPLOYER, AND SAFETY NATIONAL
CASUALTY CORPORATION, INSURANCE CARRIER, APPELLANTS.

Filed November 26, 2013.    No. A-12-1224.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

William J. Birkel and Noah M. Priluck, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellants.

Sheldon Gallner, Laura L. Pattermann, and Adam C. Tabor, of Gallner & Pattermann, P.C., for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Nebraska Medical Center and Safety National Casualty Corporation (collectively Appellants) appeal the order of the Nebraska Workers' Compensation Court that awarded benefits to Grace Smith. Appellants challenge the award of future medical benefits and the compensation court's finding that Smith had incurred a compensable mental health injury which resulted in the continuation of her temporary total disability benefits. For the reasons stated below, we affirm the compensation court's award.

## PROCEDURAL BACKGROUND

On January 13, 2011, Smith was employed as a certified nurse's assistant for Nebraska Medical Center when she suffered injuries to her cervical spine and right arm after attempting to lift a patient from a wheelchair. She experienced pain in her neck and reported it to her

- 1 -

supervisor. Smith received treatment, including two surgeries; and on September 1, she petitioned for workers' compensation benefits. Trial was held October 17, 2012. The parties did not dispute Smith's average weekly wage or that she was injured in an accident arising out of and in the course and scope of her employment. The contested issues concerned the nature and extent of Smith's injuries. The trial court awarded future medical benefits, as well as continuing temporary total disability benefits due to its finding that Smith suffered a compensable mental health injury for which she had not yet reached maximum medical improvement (MMI). Appellants timely appeal. We recount additional relevant facts in the analysis portion of this opinion.

## ASSIGNMENTS OF ERROR

Appellants assign that the compensation court erred in (1) awarding future medical care from nonauthorized treating physicians, (2) finding that Smith was entitled to future medical care in the form of a spinal stimulator, (3) finding that Smith had suffered a compensable mental health injury, and (4) finding that Smith was not at MMI and was therefore entitled to a continuation of temporary total disability payments.

## STANDARD OF REVIEW

The judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case. Neb. Rev. Stat. § 48-185 (Cum. Supp. 2012). A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. § 48-185; *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013).

On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.*

With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Id.*

## ANALYSIS

*Nonauthorized Treating Physicians.*

Appellants assign that the compensation court erred in awarding future medical care from nonauthorized treating physicians. Although Appellants assign this error, it is not separately discussed in Appellants' brief. A claimed prejudicial error must not only be assigned, but must also be discussed in the brief of the asserting party, and an appellate court will not consider assignments of error which are not discussed in the brief. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003); *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002); *Kirchner v. Wilson*, 262 Neb. 607, 634 N.W.2d 760 (2001). In its reply brief, Appellants engage in some

discussion on this issue, so we address it here because it has some bearing on the spinal stimulator matter discussed next.

Pursuant to Neb. Rev. Stat § 48-120(2)(a) (Cum. Supp. 2012), the employee has the right to select a physician who has treated the employee prior to the work-related injury. Section 48-120(2)(a) further provides, "The employer shall notify the employee following an injury of such right of selection in a form and manner and within a timeframe established by the compensation court." If the employee does not exercise such right of selection, then the employer has the right to select the physician. Under Workers' Comp. Ct. R. of Proc. 50(A)(5) (2009), "[t]he employee may choose the physician to do surgery when the injury involves . . . a major surgical operation." (Emphasis omitted.) According to rule 50(D), the primary treating physician may refer the employee for specialized medical services.

Immediately following her injury on January 13, 2011, Smith completed a "Choice or Change of Doctor Form" pursuant to the Nebraska Workers' Compensation Act. She did not designate or choose a treating physician. The form stated that in such event, Smith's employer had the right to choose the doctor to treat her. Smith testified at trial that she did not realize what she was signing at the time and did not specifically remember signing the form.

Upon referral by the workers' compensation provider, Dean K. Wampler, M.D., evaluated Smith on February 2, 2011. Dr. Wampler changed her medications, advised restricted work duty, and recommended further evaluation of her right upper extremity.

On February 4, 2011, John Hain, M.D., examined Smith upon a referral from Smith's family physician, Kimberly Jarzynka, M.D. Smith sought a second opinion from Dr. Hain and received treatment from him, including two surgeries and a referral to evaluate the possibility of a spinal stimulator. The record contains letters and medical reports authored by Dr. Hain, and the compensation court relied on these exhibits in its order.

Dr. Wampler referred Smith to Eric D. Phillips, M.D. Dr. Phillips examined Smith on March 3, 2011, a week prior to the first surgery performed by Dr. Hain. Dr. Phillips recommended the same procedure Dr. Hain was scheduled to perform. Dr. Phillips reassured Smith that Dr. Hain would "do a very good job with her condition."

The compensation court found under the "surgical rule" that the treatment rendered by Dr. Hain was that of an authorized treating physician, because an employee always has the right to choose a surgeon. The compensation court also relied on the evidence that Appellants' physician, Dr. Wampler, referred Smith to Dr. Phillips for a consultation and that Dr. Phillips reassured Smith that Dr. Hain was a good doctor and agreed with the treatment protocol recommended by Dr. Hain. The compensation court did find, however, that Smith's family physician, Dr. Jarzynka, was not an authorized treating physician, because she was not listed on the "Choice or Change of Doctor Form."

Appellants do not dispute that Smith was entitled to choose Dr. Hain as her surgeon. They argue that although Smith could choose her surgeon, she could not rely on that surgeon's recommendations as though he were the treating physician. However, Dr. Hain's recommendations for further treatment were related to his surgical and postsurgical treatment plans for Smith. We cannot say that the compensation court acted in excess of its powers by recognizing the recommendations of the authorized surgeon who was familiar with Smith's condition by virtue of his treatment of her. In a workers' compensation case, the physician

selected by an injured employee may arrange for any consultation, referral, or extraordinary or other specialized medical services as the nature of the injury requires. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013).

This leads us to Appellants' next assigned error regarding Dr. Hain's recommendation for a spinal stimulator.

*Spinal Stimulator.*

Appellants argue it was error to award future medical care to include the placement of a spinal stimulator. The compensation court based the award in large part on the recommendations of Dr. Hain.

Smith first saw Dr. Hain on February 4, 2011, about 3 weeks after the injury. Smith presented with pain in her neck, which pain radiated into her shoulder and arm to just below her elbow. MRI imaging showed a large disk herniation at the C5-6 level. Dr. Hain referred Smith for an epidural steroid injection, which she received on February 23.

After Smith received conservative treatment without improvement, Dr. Hain performed an anterior cervical diskectomy and fusion at the C5-7 level on March 10, 2011. Thereafter, Smith engaged in physical therapy but continued to experience pain in her neck and right arm. Following an MRI, Dr. Hain recommended a keyhole foraminotomy to completely decompress the C6 nerve root.

In a letter dated January 10, 2012, Dr. Hain stated that if the keyhole foraminotomy did not help, Smith "would be diagnosed with complex regional pain syndrome and spinal stimulation would be needed." On February 2, Dr. Hain performed the keyhole foraminotomy.

After the second surgery, Smith continued to complain of pain in her neck and right arm. Dr. Hain ultimately diagnosed her with type 2 complex regional pain syndrome secondary to the previous disk herniation. He recommended no further decompressive surgery. Dr. Hain referred Smith to a pain management service to be evaluated for potential spinal stimulation to control her pain. Per the referral, Dr. Lindsay Seim, a licensed clinical psychologist, evaluated Smith on July 3, 2012. Dr. Seim opined that Smith was a "fair candidate" for a spinal stimulator. Dr. Seim further opined that it would be best for Smith to begin benefiting from psychotropic medication before proceeding with the spinal stimulator process. About a month before Dr. Seim's evaluation, Smith's family physician had prescribed clonazepam (Klonopin), a medication for anxiety.

In a letter dated April 24, 2012, Dr. Phillips stated that Smith had already undergone surgery twice and needed nonsurgical care at that time.

Harris A. Frankel, M.D., examined Smith on June 1, 2012. Dr. Frankel summarized the history of Smith's injury and her examination and concluded, "At this time, I am not convinced a spinal cord stimulator is medically necessary. Rather, I believe she has a good chance for symptomatic improvement with successful management of her intercurrent situational-emotional issues."

Dr. Hain responded to a letter from Smith's counsel dated July 17, 2012, requesting yes or no answers. He affirmed that he continued to believe that Smith would benefit from the implantation of a spinal stimulator. He indicated that he did not know whether she would need pain medication indefinitely. Similarly, in a letter dated September 18, 2012, Dr. Hain stated that

he still believed that Smith was a good candidate for spinal stimulation. He continued, "This is the last proved method of controlling painful symptoms similar to what . . . Smith experiences. Dr. Frankel, I don't believe, was convinced the spinal cord stimulator was medically necessary. I feel it is the last resort to controlling her painful symptomatology."

Smith testified that she desired a spinal stimulator because her pain prevented her from pursuing activities she "loved," including work.

The compensation court awarded future medical benefits for implantation of a spinal stimulator. The compensation court stated:

> Although the evidence is not strong that a spinal cord stimulator would be beneficial to [Smith], [her] attending neurosurgeon states that he would recommend the spinal cord stimulator. . . .
>
>       . . . .
>
>       Although the evidence is not as forceful as one would hope for an expected good result from a spinal cord stimulator procedure and that the choice someone else would make may not be necessarily the choice [Smith] takes, the Court will not stand in the way between [Smith] and her attending neurosurgeon and will allow [Smith] to undergo the spinal cord stimulator procedure.

Appellants argue that they presented testimony that the spinal stimulator was not medically necessary and that treatment of Smith's emotional state would likely improve her pain symptoms. Appellants contend it was error to rely solely upon a statement by Dr. Hain which is not fully supported by the evidence. Appellants state that Dr. Hain recommended that Smith be evaluated for the stimulator which is different than recommending she have the procedure done.

Section 48-120(1)(a) authorizes an award of future medical expenses, including necessary medication. Section 48-120(1)(a) provides, "The employer is liable for all reasonable, medical, surgical, and hospital services, including . . . medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment . . . ."

In construing § 48-120(1)(a), the Nebraska Supreme Court has emphasized that before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury. See *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001).

An expert opinion in a workers' compensation case based on a mere possibility is insufficient, but the standard also does not require absolute certainty. *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004). Expert medical testimony couched in terms of probability is sufficient to sustain a workers' compensation claimant's burden of proof. *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996).

Upon our review of the record, we conclude that the compensation court was not clearly wrong in finding that Dr. Hain endorsed the implantation of a spinal stimulator to relieve Smith's pain. We recognize that other experts disagreed with Dr. Hain's opinion. However, when the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Lowe v. Drivers Mgmt.,*

*Inc.*, 274 Neb. 732, 743 N.W.2d 82 (2007). Therefore, we cannot conclude that the compensation court erred in awarding future medical benefits for the spinal stimulator.

*Mental Health Injury.*

Appellants challenge the compensation court's finding that Smith suffered a compensable mental health injury as a result of the work-related injury. Appellants note Smith's history of depression and argue no expert opined as to the cause of her current symptoms. Smith argues the court correctly found she had a compensable mental health injury as a result of the accident in that she suffered an aggravation of a preexisting condition.

At trial, Smith admitted that she had been taking a low dose of Cymbalta, an antidepressant, since 1998. She initially obtained the prescription when she attended her mother's therapy appointment and expressed concern about her siblings' treatment of her mother. Smith accompanied her mother and never met with the therapist alone. Smith had not had any mental health counseling between 1998 and the work-related injury in 2011. Smith admitted that she talked to her family physician, Dr. Jarzynka, about anxiety but denied speaking to her about depression. Smith admitted taking medication for anxiety and insomnia, starting in 2005. She claimed that in addition to other medications, she continued to take the Cymbalta to treat her anxiety. She denied that the Cymbalta affected her ability to perform any activities.

Smith testified that after the second surgery, her pain did not subside, and that she had feelings of "hopelessness [and] loss." She felt "sad all the time, crying for no particular reason," and did not want to interact with other people. She reported her symptoms to Dr. Jarzynka, who prescribed additional medications and recommended that she seek treatment with a psychiatrist.

Smith's husband testified that he was not aware that his wife suffered from any longstanding depression. He testified that at the time of trial, Smith was frequently depressed and unable to do the activities she formerly did, such as housework, yardwork, and going to school, work, and church. He testified that Smith previously slept through the night but that at the time of trial, she frequently awoke at night.

A coworker of Smith's from August 2008 through June 2010 or 2011 testified that she became friends with Smith and did not observe her crying or isolating herself prior to her injury. She stated that Smith seemed happy and laughed often. After Smith's injury and two surgeries, Smith's coworker observed Smith crying and noted that Smith seemed sad and in too much pain to do anything.

On February 25, 2010, approximately 1 year before Smith's work-related injury, Dr. Jarzynka evaluated Smith at the Nebraska Medical Center's family medical clinic for a health care maintenance examination and to follow up on her chronic medical conditions. Dr. Jarzynka noted that Smith had a history of depression, anxiety, and posttraumatic stress disorder and that Smith had taken Cymbalta for the previous 2 years. Smith reported taking Paxil and Zoloft in the past, in addition to Klonopin for anxiety. She said that she took Ambien for insomnia on an as-needed basis.

James H. Mathisen, a doctor of psychology, conducted a psychological evaluation of Smith on April 13, 2012, over a year after her work-related injury. Dr. Mathisen observed that Smith was visibly depressed and "psychomotor slow." Smith described her mood as depressed all day, every day, for the preceding 2 weeks. She reported that she had severe difficulty falling

asleep and a very poor appetite. Smith also experienced fatigue each day. She reported daily difficulty concentrating and indecisiveness. Smith reported crying often for no reason. She also reported that it had been over a year since she had had friends over to her house to socialize and that she made excuses so that her sister would not come to visit, because she is distracted by pain and does not feel like a good hostess. Smith was not able to attend church due to pain, which constituted an abrupt change following her injury. Smith reported that prior to her injury, she frequently enjoyed going out for breakfast with her son, but that after the injury, pain prevented these outings. Dr. Mathisen determined that Smith's psychological tests were not consistent with malingering. Dr. Mathisen diagnosed Smith with "Major Depressive Disorder, Severe, Single Episode secondary to the Worker's Compensation injury in question." He concluded that Smith would benefit from psychotherapy and continued medication. He deemed her unable to work a 40-hour week.

On July 11, 2012, Dr. Seim, a licensed clinical psychologist, conducted a presurgical psychological screening of Smith. Smith reported feelings of sadness and generalized anxiety and that she had begun suffering from symptoms of depression shortly after the onset of her pain. Smith acknowledged a 1997 diagnosis of posttraumatic stress disorder associated with her father's death.

Bruce D. Gutnik, M.D., conducted a psychiatric diagnostic evaluation of Smith on July 26, 2012. Smith reported that she had not received counseling but that she had been taking Cymbalta since 2002, because she suffered from depression and insomnia after her mother's death. She denied that the Cymbalta helped her, but she continued to take it. Smith told Dr. Gutnik that she was depressed for 7 to 8 months after her mother's death and was not depressed again until her current injury because she could no longer engage in the activities she did before. Smith told Dr. Gutnik about her insomnia, low appetite, low energy, and crying spells. She reported that before her injury, she had a normal mood pattern, but that it had been dysphoric since the injury.

Dr. Gutnik summarized Smith's medical records, starting with those dated October 15, 2003, and ending with those dated July 18, 2012. Based on the records, Dr. Gutnik concluded, contrary to Smith's account, that she suffered from chronic depression, anxiety, and insomnia prior to the work-related injury. Dr. Gutnik diagnosed Smith with "longstanding Dysthymic Disorder and Generalized Anxiety Disorder" and "Pain Disorder with both Psychological Factors and a General Medical Condition." Dr. Gutnik concluded that Smith's anxiety, depression, and insomnia were not related to her work injury. Dr. Gutnik expressly disagreed with the opinions in Dr. Mathisen's April 13, 2012, report, which connected Smith's depression to her injury.

Abraham B. Medaris, M.D., performed a psychiatry intake evaluation and pretreatment assessment of Smith on August 2, 2012. Dr. Medaris recounted Smith's symptoms of depression and observed, "[Smith] has a history of depressive symptoms and anxiety symptoms. . . . No history of psychiatric care or therapy." Dr. Medaris assessed Smith with "a likely Adjustment disorder with depressed mood." He recommended that she continue her medication and continue treatment with her primary care provider.

On September 6, 2012, Dr. Mathisen wrote an addition to his psychological evaluation. He noted that he did not mention in his report that Smith had previously undergone mental health intervention after the death of one of her parents because he felt the information was too

insignificant to merit a mention. He related this previous intervention to an acute emotional reaction that had been fully resolved and that was unrelated to her current major depressive disorder.

Jeffrey Stromberg, Ph.D., conducted an initial diagnostic interview of Smith on September 18, 2012. He noted that Dr. Mathisen had diagnosed Smith with major depressive disorder and that she was taking Cymbalta. Dr. Stromberg diagnosed Smith with major depressive disorder, single episode, and anxiety disorder. Dr. Stromberg attributed Smith's anxiety disorder to her work-related injury and medical conditions. On September 26, he opined that Smith's major depression was secondary to pain caused by her "recent medical condition." Dr. Stromberg recommended that Smith begin a course of psychotherapy to address her multiple medical issues.

The compensation court reviewed the evidence and concluded,

> It does not appear to the Court from a review of [Smith's] family medical records at [the Nebraska Medical Center] that [Smith] was unable to cope with the facets of day to day life with the taking of Cymbalta due to [her] mother's death in 2002. In fact, the last mention of [Smith's] being prescribed depressive medication was on February 25, 2010, and this is nearly one year before [Smith's] work related injury. Normally, if an individual goes a year or so without complaint of a prior condition, then the work related accident becomes an aggravation of a preexisting condition rather than a recurrent condition and not compensable. The Court finds that this is the case in the current matter and that [Smith's] mental health condition which is disabling at the present time is an aggravation of [Smith's] preexisting condition rather than a recurrent condition.

A worker is entitled to recover compensation for a mental illness if it is a proximate result of the worker's injury and results in disability. *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009). Where the evidence is sufficient to permit the trier of fact to find that a psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated. *Worline v. ABB/Alstom Power Int. CE Servs.*, 272 Neb. 797, 725 N.W.2d 148 (2006). In workers' compensation cases involving allegations of psychological injuries, the burden is on the claimant to prove by a preponderance of evidence that his disability is the result of an accident arising out of his employment. *Id.* A preexisting disease and an aggravation of that disease may combine to produce a compensable injury. *Manchester, supra.*

As the compensation court observed, there was evidence that although Smith had suffered from anxiety and depression prior to the injury, she was able to cope with her daily life. In contrast, after her work-related injury, Smith's mental state hindered her ability to perform activities that she had previously enjoyed. Drs. Mathisen and Stromberg connected Smith's depression and anxiety to her work-related injury. Although other experts opined to the contrary, when the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Lowe v. Drivers Mgmt., Inc.*, 274 Neb. 732, 743 N.W.2d 82 (2007). It is for the Nebraska Workers' Compensation Court to determine which, if any, expert witnesses to believe. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004).

We conclude that Smith satisfied her burden of proof and that the compensation court did not err in finding that she had a compensable mental health injury.

*MMI and Temporary Total Disability.*

Appellants assign that the compensation court erred in finding that Smith was entitled to a continuation of temporary total disability payments, rather than finding she had reached MMI. This argument is based on Appellants' assertion that Smith had reached MMI as to her physical injury and that there was no compensable mental health injury.

The date of MMI for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Stacy v. Great Lakes Agri Mktg., Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008). Temporary disability contemplates the period the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Green v. Drivers Mgmt., Inc.*, 10 Neb. App. 299, 634 N.W.2d 22 (2001), *reversed in part on other grounds* 263 Neb. 197, 639 N.W.2d 94 (2002). When a worker has reached maximum recovery, the remaining disability is permanent and such worker is no longer entitled to compensation for temporary disability. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013).

Generally, whether a workers' compensation claimant has reached MMI is a question of fact. *Stacy, supra*. Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Murphy v. City of Grand Island*, 274 Neb. 670, 742 N.W.2d 506 (2007). If the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court, an appellate court is precluded from substituting its view of the facts for that of the Workers' Compensation Court. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

Although there were medical opinions offered regarding MMI and permanent impairment ratings for Smith's physical injury, Dr. Mathisen assessed Smith on April 13, 2012, and concluded that Smith had not reached MMI with regard to her major depressive disorder, which was "more likely than not" caused by her work-related injury. He stated that Smith was unable to work a 40-hour workweek at that time due to her major depressive disorder.

Dr. Frankel examined Smith on June 1, 2012. He opined that based on Dr. Mathisen's assessment, Smith had not reached MMI for her major depressive disorder. Dr. Frankel stated that Smith was "at MMI from a medical-physical standpoint at no more than 6 weeks following her second surgery." He concluded that Smith had not suffered any permanent partial impairment as a result of her work-related injury.

The compensation court noted that "Dr. Hain agreed with Dr. Math[i]sen and his finding that [Smith] suffers from depression and is unable to work" and that Smith "is in need of mental health treatment for depression." The court ordered Appellants to pay Smith benefits for temporary total disability from January 14 to July 14, 2011; from July 22 to August 7, 2011; and from "December 15, 2011, to the date of this hearing on October 17, 2012, and . . . each week for so long in the future as [Smith] remains temporarily totally disabled."

Since we have concluded that the compensation court did not err in finding Smith had a compensable mental health injury, the compensation court was not clearly wrong in awarding continuing temporary total disability benefits, since Smith had not reached MMI for her mental health injury.

## CONCLUSION

For the foregoing reasons, we affirm the compensation court's award.

AFFIRMED.