Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:10 AM CST

DANIELLE KRAUSE AND LAURIE HOYT, AS COGUARDIANS AND
COCONSERVATORS FOR LINDA CARLSON, APPELLEES, V.
FIVE STAR QUALITY CARE, INC., ALSO KNOWN AS
CRESTVIEW HEALTHCARE CENTER, AND NEW HAMPSHIRE
INSURANCE COMPANY, ITS WORKERS' COMPENSATION
INSURANCE CARRIER, APPELLANTS.

___ N.W.2d ___

Filed November 16, 2018.    No. S-18-009.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or
award of the Workers' Compensation Court may be modified, reversed,
or set aside only upon the grounds that (1) the compensation court acted
without or in excess of its powers; (2) the judgment, order, or award was
procured by fraud; (3) there is not sufficient competent evidence in the
record to warrant the making of the order, judgment, or award; or (4)
the findings of fact by the compensation court do not support the order
or award.

2. ____: ____. On appellate review, the factual findings made by the trial
judge of the Workers' Compensation Court have the effect of a jury ver-
dict and will not be disturbed unless clearly wrong.

3. ____: ____. In workers' compensation cases, an appellate court is obli-
gated to make its own determinations regarding questions of law.

4. **Workers' Compensation: Words and Phrases.** In Nebraska, a work-
ers' compensation claimant may receive permanent or temporary ben-
efits for either partial or total disability. "Temporary" and "permanent"
refer to the duration of the disability, while "total" and "partial" refer
to the degree or extent of the diminished employability or loss of earn-
ing capacity.

5. **Workers' Compensation.** Temporary disability benefits under the
Nebraska Workers' Compensation Act are discontinued at the point of
maximum medical improvement, because a disability cannot be both
temporary and permanent at the same time.

6. **Workers' Compensation: Time.** The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident.

7. **Workers' Compensation.** When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, "permanent," within the meaning of the Nebraska Workers' Compensation Act.

8. ____. Whether a workers' compensation claimant has reached maximum medical improvement is a question of fact.

9. **Workers' Compensation: Judgments: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

10. **Workers' Compensation: Witnesses.** The single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, even where the issue is not one of live testimonial credibility.

11. **Workers' Compensation: Time.** Maximum medical improvement occurs only at the date a worker reaches maximum medical improvement for all injuries suffered as a result of the work-related injury, including psychological injuries.

12. **Workers' Compensation: Mental Health: Proof.** In workers' compensation cases involving allegations of psychological injuries, the burden is on the claimant to prove by a preponderance of the evidence that his or her disability is the result of an accident arising out of the claimant's employment.

13. **Workers' Compensation.** Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employees' mentality and attainments could perform.

14. ____. Whether a worker is totally and permanently disabled is a question of fact.

15. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the

successful party will have the benefit of every inference reasonably deducible from the evidence.

16. **Workers' Compensation: Proof.** An injured employee seeking permanent disability benefits has the burden of proving that his or her injury caused permanent impairment and that this impairment resulted in a loss of earning capacity.

17. **Workers' Compensation: Expert Witnesses.** While expert witness testimony may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court does not need to depend on expert testimony to determine the degree of disability.

18. **Workers' Compensation: Testimony.** In assessing a claimant's disability, physical restrictions and impairment ratings are important; but once a claimant establishes the cause of disability, the trial judge is not limited to this evidence and may also rely on the claimant's testimony to determine the extent of disability.

19. **Workers' Compensation: Words and Phrases.** Disability, in contrast to impairment, is an economic inquiry.

20. ____: ____. Total disability does not mean a state of absolute helplessness. Rather, it means that because of an injury, (1) a worker cannot earn wages in the same or a similar kind of work for which he or she was trained or was accustomed to performing or (2) the worker cannot earn wages for any other kind of work which a person of his or her mentality and attainments could do.

21. **Workers' Compensation.** A worker's earning power after a physical injury is often constricted by mental capacity and education, and it is a matter of common observation that a worker whose sole stock in trade has been the capacity to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood.

22. **Workers' Compensation: Evidence: Appeal and Error.** If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

23. **Workers' Compensation.** Whether an employee who has a compensable permanent total disability can, consistent with the Nebraska Workers' Compensation Act, be deprived of ongoing total disability benefits because of a subsequent noncompensable injury that independently causes permanent disability presents a question of law.

24. ____. The Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purposes.

25. ____. Where it is shown that a worker has a condition attributable to his or her employment that alone would totally disable him or her, it is

immaterial for the purposes of the workers' compensation statutes that he or she may suffer from other independent and concurrent ailments which would by themselves be sufficient to disable him or her.

Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

Patrick J. Mack, of Hennessy & Roach, P.C., for appellants.

Daniel A. Fix, of Fix Law Office, P.C., L.L.O., for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

Linda Carlson was injured during the course and scope of her employment and filed a petition in Workers' Compensation Court seeking temporary and permanent disability benefits. Approximately 3 weeks after the petition was filed, Carlson suffered a catastrophic stroke which left her largely incapacitated. The stroke was unrelated to the work injury or treatment. The compensation court found Carlson had reached maximum medical improvement prior to her stroke and awarded permanent total disability benefits. The employer and its workers' compensation insurance carrier appeal, challenging the date of maximum medical improvement and the award of permanent total disability. The employer also argues that after Carlson's stroke, she was no longer entitled to permanent total disability benefits. We affirm.

## I. FACTS

### 1. BACKGROUND

The parties stipulated to many of the relevant facts. Carlson was injured on February 17, 2013, during the course and scope of her employment with Five Star Quality Care, Inc., also known as Crestview Healthcare Center. Carlson was working as a housekeeper when she slipped and fell, fracturing her right femur.

Carlson filed a petition in the compensation court in September 2015. On October 14, 2015, she suffered a catastrophic stroke that was wholly unrelated to the work-related injury and its subsequent treatment. The compensation court granted the parties' joint motion to substitute Carlson's coguardians and coconservators as plaintiffs.

## 2. Trial Evidence

Trial was held on November 7, 2017. Carlson appeared, but did not testify, because her stroke left her unable to communicate verbally. The only witness to testify was one of Carlson's coconservators, who had known Carlson for many years. Medical evidence was submitted, and the parties offered a comprehensive joint stipulation addressing most of the relevant facts concerning Carlson's work accident and subsequent treatment.

### (a) Work Injury and Treatment

The evidence showed that the day after Carlson's fall, three pins were surgically inserted in her hip. Carlson underwent subsequent physical therapy and treatment and, in April 2013, was authorized to return to work in a "[s]edentary/[l]ight" capacity. Carlson continued to struggle with significant pain, and on June 14, Dr. Matthew Reckmeyer recommended a total hip arthroplasty and opined Carlson could not return to work in any capacity. Reckmeyer performed the hip arthroplasty on June 25. Carlson did not return to work after June 14, and she continued to report significant pain and limitations up to the date of her stroke. She last sought treatment for her work injury on September 15, 2015. Five Star Quality Care and New Hampshire Insurance Company, Five Star's workers' compensation insurance carrier (collectively Five Star), have paid all of Carlson's medical bills related to the work accident and injury and paid temporary partial disability benefits for a period of time.

(b) Medical Evidence

Medical examinations were performed on Carlson in September 2014, April 2015, and October 2015. The September 2014 examination was performed by Dr. David Diamant, who was retained by Five Star. Diamant opined Carlson had not reached maximum medical improvement at that time, because she could possibly benefit from additional treatment to her right sacroiliac joint. Diamant also performed a second medical examination of Carlson in April 2015. At that time, he did not make an express finding of maximum medical improvement. He did, however, determine Carlson had suffered a 30-percent body-as-a-whole impairment. He also opined that Carlson would likely need "continuing maintenance care" and recommended she could work at "sedentary duty capacity."

Dr. Morgan LaHolt, also retained by Five Star, conducted the October 8, 2015, medical examination. LaHolt found Carlson had reached maximum medical improvement as of that date for "any and all conditions" "related to [the] work accident injury of February of 2013." Notes from LaHolt's physical examination indicate Carlson was able to rise from a seating position using a cane. She reported pain with hip flexion, hip abduction, hip adduction, knee extension, and knee flexion. Carlson's pain limited her from engaging in range-of-motion testing. Carlson told LaHolt that she could walk for only 50 to 75 feet and that her pain increased with turns and activities that required bending.

LaHolt found Carlson had a 37-percent lower extremity impairment and opined it was "likely that . . . Carlson will have significant permanent physical restrictions as a result of her injury." LaHolt's report rejected a suggestion from one of Carlson's treating physicians regarding placement of a spinal cord stimulator to manage her pain, opining that the "likelihood of any type of functional or symptomatic improvement" from such treatment was "extremely low."

As noted, Reckmeyer was one of Carlson's treating physicians. He first examined Carlson in June 2013 and performed

the hip arthroplasty on June 25, 2013. He then saw Carlson for several followup appointments. Reckmeyer's last examination of Carlson occurred on October 24, 2014. His report of the same date stated Carlson had a "smoldering dysfunction" with her right hip and ambulated with a cane. He opined the hip replacement appeared stable and well aligned and recommended Carlson pursue treatment for sacroiliac joint problems.

Pursuant to a request from Carlson's counsel, Reckmeyer authored a subsequent report on July 17, 2017, which opined:

Carlson has been under my care for treatment of a work related left hip fracture that she sustained on or about February 17, 2013. She required a repair of her fracture and subsequently a total hip replacement. As of her last office visit October 24, 2014, she had reached a point of medical stability. She required the use of an ambulatory assistive device and would likely continue to require that. At that time, it was felt that she would be able to perform restricted activity work which would include capacity in the sedentary[-]light category. She would be limited from climbing stairs and restricted from no ladders, no kneeling or no squatting. Very limited walking and only light (10 #) lifting. Some reaching would be tolerated. These would be lifelong restrictions.

Counsel for Five Star then obtained a further report from LaHolt, who examined Reckmeyer's reports of October 24, 2014, and July 17, 2017, and opined:

After a review of the medical record, it does not appear that . . . Carlson reached MMI as of her final visit with Dr. Reckmeyer. Additional work up and treatment would not be expected to be necessary for an individual who has reached maximum medical improvement. . . . Instead, I would place . . . Carlson's date of maximum medical improvement as of October 8, 2015, the date of my independent medical examination. At the time of this encounter, . . . Carlson had undergone all

reasonable medical treatment and work up of her work related condition.

### (c) Testimony of Coguardian and Coconservator

Carlson's coguardian and coconservator, Laurie Hoyt, testified she had known Carlson for 25 years and regularly spent time with her both before and after the work accident. Hoyt observed a significant decline in Carlson's physical ability after the work accident; she became sedentary, required a cane to walk, no longer participated in her prior activities or hobbies, and complained "a lot" about pain. Hoyt also testified about Carlson's educational background and her prior work experience. Carlson had completed high school and had worked (1) in a road construction crew, performing duties such as driving a blacktop roller and flagging traffic; (2) in the food industry, loading, hauling, and unloading large containers of food; and (3) in hotel housekeeping. This vocational history was also supported by the medical reports. Additional evidence in the record showed that before her stroke, Carlson had some "[u]nderlying elevated symptoms of depression," was "mildly impaired" intellectually/cognitively, and had a full-scale IQ of 69.

### 3. COMPENSATION COURT FINDINGS

The Workers' Compensation Court found Carlson reached maximum medical improvement on October 8, 2015 (the date of her medical examination by LaHolt) and awarded temporary disability benefits up to that date. The court went on to find that from and after the date of maximum medical improvement, Carlson was permanently and totally disabled as a result of her work injury. In making this finding, the court acknowledged that no vocational rehabilitation counselor had offered an opinion on Carlson's loss of earning capacity. However, the court concluded it could find a loss of earning capacity based on evidence of permanent impairment and/or

restrictions. Thus, the court relied on Reckmeyer's 2017 report, Diamant's impairment rating, and LaHolt's observations of Carlson's restrictions on October 8, 2015. It also noted the evidence of Carlson's education, work history, and cognitive abilities. Ultimately, the compensation court concluded: "Giving due consideration to . . . Carlson's educational background, vocational/employment history, self-described physical limitations as well as the restrictions imposed upon her by medical providers . . . , the Court finds that . . . Carlson has been rendered permanently and totally disabled as a result of her work accident of February 17, 2013."

The compensation court awarded Carlson permanent total disability benefits "for so long as she remains permanently and totally disabled." The court rejected Five Star's contention that the occurrence of the stroke relieved Five Star of the ongoing responsibility to pay total disability benefits. Five Star appeals. We moved this case to our docket on our own motion.[1]

## II. ASSIGNMENTS OF ERROR

Five Star assigns, restated and consolidated, that the compensation court erred in (1) finding Carlson reached maximum medical improvement on October 8, 2015; (2) finding Carlson was permanently and totally disabled; and (3) finding the stroke had no impact on Carlson's entitlement to ongoing permanent total disability benefits.

## III. STANDARD OF REVIEW

[1] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

award; or (4) the findings of fact by the compensation court do not support the order or award.[2]

[2] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[3]

[3] In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law.[4]

## IV. ANALYSIS

### 1. Date of Maximum Medical Improvement

[4] The parties dispute the date on which Carlson attained maximum medical improvement from her work injury. This date is important because it marks the point at which temporary disability benefits end and entitlement to permanent disability benefits can be ascertained.[5] In Nebraska, a workers' compensation claimant may receive permanent or temporary benefits for either partial or total disability.[6] "Temporary" and "permanent" refer to the duration of the disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity.[7]

[5-7] Temporary disability benefits under the Nebraska Workers' Compensation Act are discontinued at the point of

---

[2] *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018); Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016).

[3] *Id.*

[4] *Kohout v. Bennett Constr.*, 296 Neb. 608, 894 N.W.2d 821 (2017); *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008).

[5] See *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). See, also, Neb. Rev. Stat. § 48-121(3) (Reissue 2010) ("compensation for temporary disability shall cease as soon as the extent of the permanent disability is ascertainable").

[6] See *id.*

[7] *Gardner, supra* note 5.

maximum medical improvement, because a disability cannot be both temporary and permanent at the same time.[8] The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident.[9] When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, "permanent," within the meaning of the Nebraska Workers' Compensation Act.[10]

[8,9] Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact.[11] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and we give the successful party the benefit of every inference reasonably deducible from the evidence.[12]

In her petition, Carlson alleged that the "nature and extent of the injury sustained is right femur fracture, post total hip arthroplasty, chronic pain syndrome, gait disturbance and depressive disorder." The parties stipulated that she sustained a compensable injury arising out of the February 17, 2013, accident and that she underwent a "percutaneous screw fixation and subsequent total hip arthroplasty as a result of the femur fracture sustained" in the work accident. The stipulation is silent regarding her chronic pain syndrome, gait disturbance,

---

[8] *Id*. See, also, § 48-121(3).

[9] *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

[10] *Gardner, supra* note 5; § 48-121.

[11] *Stacy, supra* note 9; *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005).

[12] See, *Gardner, supra* note 5; *Money, supra* note 4.

and depressive disorder. There is no other evidence of causation in the record.

[10] Five Star argues the compensation court erred in relying on the opinions of Reckmeyer and LaHolt in finding Carlson reached maximum medical improvement on October 8, 2015. With respect to the medical opinions of Reckmeyer, Five Star presents several arguments, all of which amount to attacks on the weight and credibility of Reckmeyer's July 2017 report. The single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, even where the issue is not one of live testimonial credibility.[13] Here, the compensation judge expressly found the opinions offered by Reckmeyer to be persuasive, and Five Star's appellate arguments to the contrary are without merit.

With respect to LaHolt's opinion, Five Star concedes his report is "sufficient to support a finding of maximum medical improvement from a physical medicine prospective."[14] Indeed, LaHolt's October 8, 2015, report expressly stated Carlson had reached maximum medical improvement as of that date for "any and all conditions" "related to [the] work accident injury of February of 2013." But Five Star argues there was a psychological aspect of Carlson's injury that was not addressed by LaHolt. Some additional background is helpful to understand this argument.

Dr. Robert Arias, a neuropsychologist, examined Carlson in August 2015 on a referral from her treating physician to determine whether she was a good candidate for a spinal cord stimulator to help with her pain management. After his examination, Arias diagnosed Carlson with "Unspecified Neurocognitive Disorder," "Unspecified Depressive Disorder,"

---

[13] *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013); *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

[14] Brief for appellants at 18.

and "Intellectual Disability, Mild." His report made no attempt to relate any of these diagnoses to Carlson's work accident injury or related treatment.

[11] Now, Five Star relies on Arias' diagnoses to suggest that its own retained expert, LaHolt, failed to adequately consider Carlson's "psychological injuries" when he concluded on October 8, 2015, that she had reached maximum medical improvement for any and all conditions related to the work injury. Five Star's argument is based on the proposition that maximum medical improvement occurs only at the date a worker reaches maximum medical improvement for all injuries suffered as a result of the work-related injury, including psychological injuries.[15]

[12] In workers' compensation cases involving allegations of psychological injuries, the burden is on the claimant to prove by a preponderance of the evidence that his or her disability is the result of an accident arising out of the claimant's employment.[16] Here, the burden was on Carlson to prove any psychological injuries were caused by the work-related accident.

Although Carlson's complaint alleged depression as one of the accident-related injuries, she never attempted to prove a causal relationship between her depression and the work accident. And although Arias' report noted Carlson suffered from unspecified neurocognitive disorder and unspecified depressive disorder, he did not opine that either disorder was caused by the February 17, 2013, accident or related treatment. The parties' stipulation did not reference either disorder, and there is no other evidence in the record suggesting that either disorder, or any other psychological condition, was caused by the February 17 accident and resulting treatment.

On this record, evidence of psychological injury was simply not a factor in the compensation court's finding of maximum

---

[15] See *Rodriguez, supra* note 11.

[16] *Worline v. ABB/Alstom Power Int. CE Servs.*, 272 Neb. 797, 725 N.W.2d 148 (2006).

medical improvement. Consequently, Five Star's concern that LaHolt's report did not "attempt to comment on the psychological or neuropsychological aspects"[17] of Carlson's treatment with Arias is of no moment. The trial court did not clearly err in finding Carlson had reached maximum medical improvement on October 8, 2015, for all injuries suffered as a result of the work accident.

## 2. Permanent Total Disability

[13,14] After determining the date of maximum medical improvement, the compensation court found that as of that date, Carlson was permanently and totally disabled as a result of the work accident and injury. Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employees' mentality and attainments could perform.[18] Whether a worker is totally and permanently disabled is a question of fact.[19]

[15] Five Star argues there was insufficient evidence in the record to support the court's factual finding that Carlson was permanently and totally disabled. When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.[20]

[16,17] An injured employee seeking permanent disability benefits has the burden of proving that his or her injury caused

---

[17] Brief for appellants at 18.

[18] *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016); *Money, supra* note 4.

[19] See *id*.

[20] *Nichols v. Fairway Bldg. Prod.*, 294 Neb. 657, 884 N.W.2d 124 (2016); *Tchikobava, supra* note 18.

permanent impairment and that this impairment resulted in a loss of earning capacity.[21] While expert witness testimony may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court does not need to depend on expert testimony to determine the degree of disability.[22] Here, the court based its finding of permanent and total disability on the uncontroverted medical evidence of permanent impairment and lifelong restrictions, as well as testimony regarding Carlson's self-described physical limitations and evidence of her educational background, vocational history, and mental ability before the stroke.

Before addressing this evidence, we note Five Star makes much of the fact that presumably due to the timing of Carlson's stroke, no expert performed additional medical assessments of Carlson's impairment or restrictions after the chronological date of maximum medical improvement—October 8, 2015. Five Star argues that because permanent impairment and permanent restrictions cannot be ascertained until after maximum medical improvement is reached,[23] the lack of such assessments after October 8 resulted in insufficient evidence upon which the trial court could make a determination of permanent disability.

This argument, however, is based only on the chronological dates of the relevant assessments and ignores their content. In finding Carlson totally and permanently disabled, the trial court specifically relied on the medical opinions of both Reckmeyer and LaHolt. Temporally, Reckmeyer's opinion was rendered after maximum medical improvement was reached, because his report was authored in July 2017. But what is more important, in that report, Reckmeyer opined that as of October 24, 2014, Carlson would have "lifelong restrictions" requiring the use of an ambulatory assistive device and limiting her to

---

[21] *Gardner, supra* note 5.

[22] See *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996).

[23] See *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015).

sedentary-light work. Reckmeyer specified that Carlson would also have "lifelong" limitations on her ability to climb stairs, walk, climb ladders, kneel, squat, and lift. Similarly, LaHolt found in October 2015, days before her stroke, that Carlson would have "significant permanent physical restrictions." In addition, Diamant assessed Carlson with a 30-percent body-as-a-whole impairment, also before her stroke. No evidence was offered to the contrary. The evidence in the record was sufficient to support the compensation court's finding that prior to her stroke, Carlson suffered significant and severe permanent impairment and restrictions as a result of her work-related accident.

Five Star does not specifically contest the compensation court's finding that based on her permanent impairments and restrictions, Carlson was permanently and totally disabled as a result of the work accident of February 17, 2013. But for the sake of completeness, we note the record supports this factual finding. In addition to the medical assessments of permanent, lifelong restrictions and physical impairment, the record also contains evidence of Carlson's prior work history, education, and cognitive ability.

[18-20] In assessing a claimant's disability, physical restrictions and impairment ratings are important; but once the claimant establishes the cause of disability, the trial judge is not limited to this evidence and may also rely on the claimant's testimony to determine the extent of disability.[24] Disability, in contrast to impairment, is an economic inquiry.[25] And total disability does not mean a state of absolute helplessness.[26] Rather, it means that because of an injury, (1) a worker cannot earn wages in the same or a similar kind of work for which he

---

[24] *Money, supra* note 4.

[25] *Id.*

[26] *Gardner, supra* note 5; *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015); *Money, supra* note 4.

or she was trained or was accustomed to performing or (2) the worker cannot earn wages for any other kind of work which a person of his or her mentality and attainments could do.[27]

Carlson had a high school education, and her prior work experience was in vocations which required significant mobility and which were incompatible with the lifelong restrictions imposed upon her as a result of her work-related injury. She was approximately 62 years old at the time of her stroke. Carlson had a mild intellectual disability and her full-scale IQ was 69.

[21] We have observed that a worker's earning power after a physical injury is often constricted by mental capacity and education, and """"it is a matter of common observation that a [worker] whose sole stock in trade has been the capacity to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood.""""[28] Here, the record contains medical evidence detailing permanent and significant restrictions that resulted from Carlson's work injury, as well as information about her work history, education, and mental and physical abilities.

[22] If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.[29] Considering the evidence in the light most favorable to Carlson, we find the record supports the compensation court's determination that as of October 8, 2015, she was permanently and totally disabled as a result of her work accident of February 17, 2013.

---

[27] See *id.* See, also, *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013).

[28] *Money, supra* note 4, 275 Neb. at 621, 748 N.W.2d at 65.

[29] *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

### 3. Effect of Stroke on Benefits

Finally, Five Star argues that even if Carlson reached maximum medical improvement before the date of her stroke and was permanently and totally disabled at that time, the subsequent stroke left her completely incapacitated and unable to care for herself. Five Star therefore asks us to conclude the stroke "cut off"[30] Carlson's entitlement to permanent total disability benefits.

[23] We have not previously considered whether an employee who has a compensable permanent total disability can, consistent with the Nebraska Workers' Compensation Act, be deprived of ongoing total disability benefits because of a subsequent noncompensable injury that independently causes permanent disability. We conclude this presents a question of law.

The only legal support Five Star offers for its position that Carlson's permanent total disability benefits should end after her stroke is a single sentence in § 48-121(1). Section 48-121(1) sets out the schedule of compensation for total disability, and provides: "Nothing in this subdivision shall require payment of compensation after disability shall cease." Five Star's theory is that the permanent total disability caused by Carlson's work injury "ceased" on the date of her stroke, apparently reasoning that if she had not already been permanently and totally disabled from the work accident, the stroke would have rendered her so. Five Star suggests Carlson's permanent total disability was either subsumed, or canceled out, by the effects of her subsequent stroke. It analogizes the situation to the non-work-related death of an employee receiving permanent total disability payments and suggests that if "Carlson had passed away from complications to her stroke, her entitlement to . . . permanent and total disability benefits would be cut off on the date of her unfortunate passing."[31]

---

[30] Brief for appellants at 27.

[31] *Id.*

We do not find this death analogy to be factually or legally supported. Carlson survived her stroke, and we see nothing in the record to support Five Star's contention that her work-related disability ceased once she had the stroke. To the contrary, the evidence supports that she was permanently and totally disabled from a work accident injury at the time she had her stroke, and she remained so afterward. Because Carlson's permanent total disability did not cease as a result of the stroke, Five Star's reliance on § 48-121(1) is misplaced.

Although Five Star has not framed its argument as one seeking to modify an award, Five Star basically seeks to terminate Carlson's award of permanent total disability benefits due solely to her subsequent stroke. Nebraska's workers' compensation statutes allow an award to be modified "on the ground of increase or decrease of incapacity *due solely to the injury*."[32] But Five Star is claiming the change in disability was due to the stroke, not the work injury, so the modification statute does not support Five Star's requested relief either.

[24] The Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purposes.[33] Five Star's position is contrary to the beneficent purpose of the act, because it would result in Carlson's entitlement to permanent total disability benefits for a work-related injury being cut off by a completely unrelated event.

Five Star directs us to no cases from this jurisdiction or elsewhere that support its position. There is very little precedent on this issue, but a few other courts have considered and rejected the suggestion that an employee's permanent total disability benefits can be canceled out if the employee suffers a subsequent independent injury that also causes disability.

Kentucky addressed a factual situation similar to the instant case in *Beth-Elkhorn Corporation v. Dotson*.[34] In

---

[32] Neb. Rev. Stat. § 48-141 (Reissue 2010) (emphasis supplied).

[33] *Anderson v. EMCOR Group*, 298 Neb. 174, 903 N.W.2d 29 (2017).

[34] *Beth-Elkhorn Corporation v. Dotson*, 428 S.W.2d 32 (Ky. App. 1968).

that case, the worker had been a coal miner for more than 40 years when he suffered a heart attack after finishing his workday. Medical evidence established that the worker suffered from pneumoconiosis as a result of his employment and that the pneumoconiosis left him permanently and totally disabled. Medical evidence also established that the non-work-related heart attack left the worker totally disabled. The court affirmed an award of total disability benefits, reasoning that "'any disability an employe[e] sustains in the course of and arising out of his employment shall [not] be cancelled out, for compensation purposes, by disability from another cause.'"[35] This rationale was based on *Daugherty v. Watts*,[36] an earlier case decided by the Kentucky Court of Appeals. *Daugherty* expressly held that "if a workman has suffered a compensable injury he will not be deprived of compensation merely because of the existence of an independent, concurrent cause of disability."[37]

[25] One legal commentator has cited to *Daugherty* for the following general proposition:

Where it is shown that a worker has a condition attributable to his or her employment that alone would totally disable him or her, it is immaterial for the purposes of the workers' compensation statute[s] that he or she may suffer from other independent and concurrent ailments which would by themselves be sufficient to disable him or her.[38]

This proposition is consistent with the beneficent purpose of the Nebraska Workers' Compensation Act.

Carlson was permanently and totally disabled as a result of a work accident and injury. The fact that she subsequently suffered a stroke that was neither medically nor causally related,

---

[35] *Id*. at 34.

[36] *Daugherty v. Watts*, 419 S.W.2d 137 (Ky. App. 1967).

[37] *Id*. at 138.

[38] 82 Am. Jur. 2d *Workers' Compensation* § 353 at 383-84 (2013).

does not relieve Five Star of its obligation to pay Carlson permanent total disability benefits under the Nebraska Workers' Compensation Act.

## V. CONCLUSION

For the foregoing reasons, the compensation court did not err in finding Carlson (1) reached maximum medical improvement on October 8, 2015; (2) was permanently and totally disabled as of that date as a result of her work-related accident; and (3) remained permanently and totally disabled as a result of her work-related accident after her stroke. We affirm the judgment of the compensation court.

Affirmed.