IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WELCHERT V. ABE'S TRASH SERVICE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN A. WELCHERT, APPELLANT,

V.

ABE'S TRASH SERVICE, APPELLEE.

Filed March 18, 2025.    No. A-24-599.

Appeal from the Nebraska Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed.

Timothy S. Dowd, of Dowd & Corrigan, L.L.C., for appellant.

Madaline McGill, of Hennessy & Roach, P.C., for appellee.

MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

John A. Welchert appeals the Nebraska Workers' Compensation Court order finding that he sustained a compensable injury while working for Abe's Trash Service (Abe's), that he had reached maximum medical improvement (MMI), that he was not entitled to temporary total disability (TTD) benefits after the date he reached MMI, and that he was not entitled to payment for future medical care. Based on the reasons that follow, we affirm.

## BACKGROUND

On May 11, 2023, Welchert filed a petition in the compensation court alleging that on or about June 3, 2022, he sustained injuries to his spine as a result of an accident arising out of and in the course of his employment with Abe's. In its answer, Abe's denied the allegations and asserted various defenses, including that Welchert's injury was the result of a natural progression

of a preexisting condition, and that there was no causal connection between Welchert's workplace injury and the health condition in question.

A trial was held on the petition in May 2024, during which Welchert testified and both parties presented medical expert opinions. The court also received Welchert's medical records into evidence.

Welchert testified that he had been employed full-time by Abe's for 20 years performing the same job duties. He worked about 45 hours a week over a 5½-day workweek. His primary duties included driving a skid loader, operating a trash compactor, and sorting through construction debris, all of which occurred at a landfill. He estimated he spent 6 hours a day in the skid loader, which had hard rubber tires. He explained that it could not have air tires because they would go flat driving over the rough terrain in the landfill, which consisted of concrete blocks, bricks, and lumber. He testified that when driving the skid loader, he was thrown side to side and was bounced up and down on the seat, which was jarring on his back.

In 2019 or 2020, Welchert started experiencing pain in his lower back while operating the skid loader. He testified he would have "a few beers" after work and the pain would subside. However, the back pain would return the next day at work.

On June 3, 2022, Welchert experienced pain like he had never felt before in his left hip that went down his left leg to his knee. The pain was so severe he was unable to go to work and went to the emergency room. Welchert denied ever seeking medical treatment for his back prior to June 3, 2022. He had not returned to work since June 3.

Welchert's medical records show that when he went to the hospital on June 3, 2022, he reported left leg pain, which he described as a left thigh cramp that started just below the hip and went to about 3 inches above the knee. An x-ray revealed a bony lesion on the left femur.

Two days later, Welchert went to the emergency room again, reporting an onset of a cramping pain in his left thigh while driving. He claimed the thigh pain began the evening of June 1, 2022, with no known cause. He denied any lower back pain. It was noted that the bony lesion on the left thigh was seen on a CT scan in 2014. He was prescribed pain medication and told to follow up with his primary care physician.

Welchert had an appointment with his primary care physician, Dana McCabe, PA-C, on June 7, 2022, where he complained of "pain from hip down to his knee on the left side." McCabe was unsure what the etiology of Welchert's pain was and recommended he continue taking the prescription medicine. McCabe told him if he was not feeling better in 1 week she would refer him to a neurosurgeon for possible radicular cause of his pain.

Welchert had an MRI scan of his lumbar spine on June 14, 2022. The following day, Welchert saw Dr. Michael Longley at Nebraska Spine + Pain Center. Welchert complained of pain in his left thigh that came on suddenly about 2 weeks prior to his visit. He did not report any back pain. Longley commented in his notes that Welchert's lumbar MRI identified "L4-5 degenerative spondylolistheses with bilateral foraminal stenosis at L4-5," which could be the source of his symptoms. Longley further stated that the lesion on his left femur could also be the source of his pain. He ordered additional testing of the left femur lesion. He also stated that Welchert was not able to return to work.

Another medical note by Longley dated June 22, 2022, states an MRI scan of Welchert's left hip and femur showed that the lesion on his femur was a benign fibrous tumor.

On July 28, 2022, Welchert saw David Siebels, PA-C, and reported that he woke up with severe left thigh pain about 6 weeks prior and had been unable to work for those 6 weeks. Siebels' notes state that a lumbar MRI showed a "suspicious density to the left at L3-L4, possibly compressing and irritating the left L3 nerve." He believed this would fit with the thigh pain "as would lateral recess and foraminal narrowing at L4-L5."

About 3 months later, on October 13, 2022, Welchert saw Dr. John Treves, a neurologist, and reported that his pain had changed in that he no longer had left thigh pain and did not have low back pain. He had some thigh numbness but it was improving. Welchert told Treves he now had mid-thoracic pain. Treves noted Welchert's June 14, 2022, lumbar MRI scan showed moderate disc degeneration and spondylosis. There was also grade 1 degenerative L4-5 spondylolisthesis, and a left L3 nerve lesion suspicious for a small disc herniation. He believed his pain at the time was not coming from his low back findings, and thought he could have thoracic spondylosis, thoracic stenosis, or a compression. Because he was no longer having low back pain and not much radiculopathy, he did not think there was anything more to do with the low back findings. Treves ordered a thoracic MRI.

Treves spoke with Welchert on October 30, 2022, concerning his thoracic MRI findings. He told him there were "chronic compression fractures T2, T8, and T9 and multilevel spondylosis" as well as "some degree of pleural effusion."

Welchert next saw Treves on March 23, 2023. He complained of mid-to-lower thoracic pain, and pain and numbness in his left lower extremity. He did not have much low back pain. In Treves' opinion, Welchert had mid-to-lower thoracic pain from chronic compression fractures and spondylosis; his left lumbar radiculopathy was related to degenerative change, foraminal narrowing, and possibly a nerve sheath tumor. Treves' notes from the visit also state: "It sounds like [Welchert] may have a workers' comp claim. I am a little bit unclear on whether he does or not. I explained to the family that the findings are most degenerative in nature and you would be talking about aggravation."

Another lumbar MRI scan was done on March 31, 2023, and revealed "[r]esolution of previously identified left lateral and far lateral soft tissue mass at L3-4 leaving only mild annular bulging with mild to moderate left-sided foraminal stenosis, compared to 6/14/2022. In the absence of operative resection this implies disc extrusion has resorbed [sic]" and "[s]table grade I isthmic anterolisthesis of L4 on L5 with stable severe bilateral L4-5 foraminal stenosis."

Welchert next saw Treves on April 13, 2023. He reported pain and numbness involving his left lower extremity, but not much back pain. Treves believed Welchert's left lower extremity symptoms were largely related to a L3-4 disk herniation which healed and "degenerative change with an anterolisthesis and foraminal narrowing L4-5." Treves' notes from the visit state that "[Welchert] has a pending work comp claim and feels that his left leg pain and numbness is related to work activities at the landfill." He further wrote,

> [i]t sounds like he does fairly heavy work and was also bouncing around in a skid loader. I think the left L3-4 disc herniation could certainly be related to his work environment, and it has healed over time. It certainly is conceivable that hard work over the years or bouncing on the skid loader has worsened the L4-5 disc level and listhesis.

Treves spoke with Welchert by phone on April 20, 2023, and discussed the possibility of surgery, specifically a decompression with a L4-5 fusion. Welchert indicated he wanted to proceed with the surgery. However, surgery was delayed due to various unrelated issues. Welchert had lumbar fusion surgery at the L4-5 on March 26, 2024.

On June 4, 2023, in response to questions posed by Welchert's attorney, Treves wrote that he had seen Welchert as a patient since July 2022 for complaints of mid-back pain and left lower extremity radiculopathy. He stated that Welchert's working diagnoses included thoracic spondylosis, chronic thoracic compression fractures, lumbar spondylosis, left L3-4 lateral disc herniation, and L4-5 degenerative spondylolisthesis with severe bilateral L4 foraminal stenosis. It was Treves' opinion within a reasonable degree of medical certainty that Welchert's diagnosed conditions were either caused or aggravated by his work environment as a laborer for Abe's. He further opined that the L3-4 disc herniation was likely caused by his work environment and the other conditions were degenerative in nature and likely aggravated by the heavy labor-type work activities and bouncing around on a skid loader.

Treves also stated in the letter that Welchert was not at MMI, future medical treatment would be required, including surgery, and no permanent impairment rating could be determined at the time.

Dr. Scott A. Vincent, an orthopedist, subsequently performed an "independent medical examination" of Welchert at the request of Abe's. He reviewed Welchert's medical records, medical images, and performed a physical exam of Welchert. Welchert reported ongoing low back pain with radiating symptoms and numbness into the left leg. Vincent's diagnosis of Welchert's back condition was "lumbar radiculopathy likely from the foraminal stenosis at L4-5. He initially had a disc herniation which was likely contributing to his symptoms initially in June of 2022, however, that did resolve on subsequent MRI, and he remained symptomatic from the degenerative changes noted at L4-5."

In answering whether Welchert's diagnosed back conditions were the result of his job duties at Abe's, Vincent stated that because Welchert made no mention of a work-related cause of his symptoms when he initially sought treatment and described no specific injury at work other than his pain developing over time, Vincent was unable to state with any degree of medical certainty that Welchert's ongoing symptomatic conditions in his lumbar spine were caused or aggravated by his work with Abe's. He further added there was no evidence in the medical literature that supports one's occupation contributing to the cause or progression of degenerative lumbar spine pathology.

Regarding MMI, Vincent stated he could not say with medical certainty that Welchert's current complaints were related to a specific work-related injury and, therefore, MMI was not applicable in this case. Vincent also stated, "As I cannot state with any degree of certainty that [Welchert's] ongoing symptoms are related to any specific work injury, I do not believe that any future medical care as it pertains to his lumbar spine would be related or resultant from his alleged work injury."

Following trial, the court entered an award finding that Welchert suffered an injury to his back arising out of and in the course of his employment with Abe's on or about June 3, 2022. It stated that objective testing showed a disc herniation at L3-4 that Treves opined was caused by Welchert's work. The compensation court determined that Welchert reached MMI on October 13,

2022, because "[a]ny continuing symptoms and limitations, the Court finds, are due to [Welchert's] pre-existing, nonwork-related degenerative condition." It found Welchert was entitled to TTD benefits from June 3, 2022, to October 13, 2022, and ordered Abe's to pay medical expenses incurred before October 13. The court found that subsequent medical treatment received by Welchert "was for his degenerative spinal condition and not the work injury" and that he was not entitled to payment for future medical care.

## ASSIGNMENTS OF ERROR

Restated, Welchert assigns that the compensation court erred in (1) determining that he reached MMI on October 13, 2022; (2) determining that he was not temporarily totally disabled after October 13, 2022, and continuing up to the time of trial; and (3) finding that he was not entitled to payment for future medical expenses.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Averill v. Omaha Public Schools*, 33 Neb. App. 272, 14 N.W.3d 556 (2024).

Findings of fact made by the compensation court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id.* When testing the sufficiency of the evidence to support findings of fact made by the compensation court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017).

## ANALYSIS

*MMI.*

Welchert first assigns that the compensation court erred in finding he had reached MMI on October 13, 2022. He also assigns that the compensation court erred in finding he was not temporarily totally disabled after that date. The compensation court awarded him TTD benefits from June 3, 2022, through October 13, 2022, the day it determined he reached MMI. It determined he was not entitled to TTD benefits after that date because it found his continued symptoms and inability to work were not related to the work accident. He does not separately argue the second assignment of error, but it is related to the first assignment of error and they will be discussed together.

Welchert argues he was still temporarily totally disabled from the work accident at the time of trial and thus, had not reached MMI as he was still incapable of working. He states that "[he] has not worked since June 3, 2022. Since that time, [he] has submitted to medical treatment, was convalescing, suffering from a back injury, and unable to work because of it. By definition, [he] is temporarily disabled." Brief for appellant at 17.

In finding that Welchert reached MMI from his work injury on October 13, 2022, the court explained as follows:

On [October 13, 2022], [Welchert] reported that he was no longer having back or left thigh pain and his thigh numbness was improving. Rather, he now had new pain in his thoracic spine. Dr. Treves did not think the thoracic pain was caused by the low back, and he determined that [Welchert] "is not having back pain nor does he have much in the way of left radiculopathy, so I do not think there is anything more to do with the low back findings." (E13, p.1).

[Welchert] does not see Dr. Treves again for several months. He returned on March 23, 2023, with complaints of mid-to-lower thoracic pain and numbness in his lower extremity worse with movement. Dr. Treves explained to [Welchert] his "left lumbar radiculopathy is related to degenerative changes, foraminal narrowing, and possibly a nerve sheath tumor." (E18, p.1). It is at that point [Welchert] mentioned there may be a workers' compensation claim, to which Dr. Treves responded that it was "a little bit unclear on whether he does or does not" and stated that his "findings are most [sic] degenerative in nature." (E18, p.1). A contrast lumbar MRI was ordered and showed resolution of the herniation, i.e., the extrusion had reabsorbed. (E19).

The compensation court determined that Welchert's low-back herniation healed, and he no longer had symptoms in his low back and left leg for a time. The court noted Welchert's own surgeon felt there was nothing more to do with the low back in October 2022. The court stated it was not persuaded Welchert's job had then aggravated his preexisting degenerative condition in his low back to the point it necessitated surgery, as he had not been working since June 2, 2022. Since not working, his low back condition improved. He experienced new pain in his thoracic spine, which was also brought on by a degenerative condition. The court concluded that any continuing symptoms and limitations were due to Welchert's preexisting, nonwork-related degenerative condition.

The date of MMI for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from the injuries sustained in a particular compensable accident. See *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018).

Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and we give the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

The compensation court found that Welchert sustained an injury arising from his work with Abe's, but that his symptoms from the work-related injury had resolved on October 13, 2022. Similarly, the court found Welchert was only unable to work because of the work injury from June 3, 2022, through October 13, 2022, and awarded him TTD benefits during that time. It concluded that Welchert's continued symptoms and inability to work were related to his preexisting condition and not his work accident.

There was sufficient evidence to support the court's determination regarding the date of MMI and its award of TTD benefits. As the compensation court found, on October 13, 2022, Welchert reported that his pain had changed in that he no longer had left thigh pain and did not have low back pain. Welchert told Treves he now had mid-thoracic pain. Treves did not believe his pain at the time was coming from his low back findings. Because he was no longer having low back pain, Treves did not think there was anything more to do with the low back findings.

Given our standard of review, we conclude the compensation court did not err in finding Welchert reached MMI on October 13, 2022, and did not err in finding Welchert was not entitled to TTD benefits after that date. Welchert's first two assignments of error fail.

*Future Medical Treatment.*

Welchert next assigns that the compensation court erred in failing to award expenses for future medical treatment. He relies on his own testimony that he remains symptomatic because of his work-related conditions and remains under active medical treatment for these work injuries. He argues that in addition to the obvious fact that he remains symptomatic and will require future medical treatment, Treves' June 4, 2023, medical report states that Welchert had not reached MMI and will require future medical treatment. Welchert contends that Abe's did not present evidence to refute Treves' opinion.

The compensation court determined that future medical care was not necessary for the work-related injury. It stated that the evidence showed the herniated disk had healed and the treatment he received after October 13, 2022, was for his degenerative spinal condition and not the work injury.

An award of future medical expenses requires explicit medical evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury. *Arroyo v. Caring for People Servs.*, 29 Neb. App. 93, 952 N.W.2d 11 (2020). Although Treves gave the opinion in his June 4, 2023, medical report that Welchert would require future medical treatment, there was other evidence to support a conclusion that such future medical treatment would not be reasonably necessary to relieve effects of his work-related injury. For instance, in Vincent's report following his independent medical exam, he wrote that he could not state with any degree of certainty that Welchert's ongoing symptoms were related to any specific work injury and, therefore, he did not believe that any future medical care as it pertains to his lumbar spine would be related to his alleged work injury.

As discussed above, the compensation court found that Welchert's work injury and related symptoms had resolved as of October 13, 2022, after which date, his symptoms were attributed to the natural progression of his degenerative spinal condition. We determine the compensation court's finding regarding future medical care is supported by the evidence and it did not err in failing to award future medical expenses. This assignment of error fails.

*Additional Argument.*

In his appellate brief, Welchert makes an argument that the court erred in "substituting its own diagnosis" of his work-related back injury for that of his medical expert. Brief for appellant at 12. However, Welchert did not assign this as error. To be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's

initial brief. *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024). Because Welchert did not assign that the court erred in substituting its own diagnosis for that of his medical expert, we do not address it.

CONCLUSION

We conclude the compensation court did not err in finding Welchert had reached MMI, was not entitled to TTD benefits after the date he reached MMI, and was not entitled to payment of future medical expenses. Accordingly, the compensation court's order is affirmed.

AFFIRMED.